ROCKDALE CABLE T.V. CO., Plaintiff-Appellant, *v.* GEORGE A. SPADORA *et al.*, Defendants-Appellees.

Third District No. 80-455

Opinion filed July 2, 1981.

Stephen M. Masters, of Robson, Masters, Ryan, Brumund & Belom, of Joliet, for appellant.

Lawrence C. Gray, of Galowich & Galowich, of Joliet, for appellees.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The appellant here, Rockdale Cable T.V. Co. (hereinafter Rockdale), filed an action in the Circuit Court of Will County seeking to recover damages allegedly due as a result of a breach of contract. Named as defendants in the said action were the appellees, George A. Spadora, Community Electronics Systems, Inc., and Teleprompter Cable Systems, Inc. (hereinafter Spadora, Community and Teleprompter, respectively). In a bench trial in the court below, a judgment was entered against the appellant, and it now seeks our review.

In 1977, Community was a subsidiary of Teleprompter and the owner of 6¾ acres of land near Joliet, Illinois, upon which was located a cable television tower, two small buildings and certain headend electronic equipment. According to the testimony of appellant's agent, Arthur A. Kraus (hereinafter Kraus), Teleprompter and Community were ceasing operations in the Joliet area, and in the process of closing up operations sought to sell the Joliet property. On behalf of Rockdale, Kraus by letter offered to purchase for $20,000 the "Joliet Cable T.V. Tower Site" with the understanding "that the two small buildings and TV Tower intact [were] a part of this real estate purchase." Following an apparent period of negotiation, Kraus sent Spadora, an agent for Teleprompter and Community, the following telegram:

"In reference to our phone conversation this is to confirm our offer at $22,400. We will be forwarding a certified check for ten percent."

The telegram was dated March 25, 1977.

The March 25 offer was subsequently accepted, and five days later Community executed a quit claim deed to the 6¾ acres of real estate as well as a bill of sale containing the following paragraph:

"1. Seller hereby grants, bargains, sells, assigns, transfers, conveys and sets over unto Buyer, free and clear of liens, liabilities, obligations, encumbrances, security interests, and interest of other persons of every kind and nature, all Seller's right, title and interest, of every kind and nature, in and to all improvements present on that certain parcel of real estate described on the Deed annexed hereto as Exhibit A, the Joliet headend site, including the headend, tower and all headend electronics."

The purported sale of the headend electronics resulted in the current dispute.

The court below was advised that headend electronic equipment is that equipment necessary to make the cable television tower functional. Kraus testified that when he offered on behalf of Rockdale to purchase the Joliet site intact, his offer was intended to include all headend

electronic equipment. Indeed, the bill of sale executed by Community transfers all the Seller's right, title and interest in such equipment. Sometime later, however, Rockdale allegedly learned for the first time that all of the headend electronic equipment had been sold by Community to City Communications, Inc. (hereinafter City), said sale having been made more than a month prior to Rockdale's March 25 offer.

Community's Agent, Spadora, recalls events somewhat differently than as alleged and testified to by Rockdale's Kraus. According to Spadora, certain of the subject equipment at the Joliet site was unwanted by either Community or City, and on March 21, 1977, he informed Kraus of this fact and offered to transfer the title of this abandoned equipment to Rockdale in the bill of sale for the Joliet site. Further, Spadora testified during appellant's case in chief that the sale of the "TV Tower intact" was not understood to include the sale of the tower with all headend electronic equipment.

Rockdale's instant suit for breach seeks money damages for the value of the equipment it allegedly contracted to purchase but failed to receive. Appellant's theory is that the documents before the court, taken together, comprise a written contract for the purchse of the headend electronic equipment. At the close of Rockdale's presentation of evidence, the appellees moved for a judgment under section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 64(3)). That motion was granted, and the judgment is now presented for our review.

Rockdale urges that the bill of sale, the correspondence of the parties, the telegram, and the payment drafts constituted a written contract for the sale of the headend equipment, and the failure to deliver same constituted a prima facie breach of contract. According to the law governing the sale of personal property, the final writing of the contracting parties, in this case the bill of sale, may be explained or supplemented with evidence of consistent additional terms unless the final writing is found to be a complete and exclusive statement of the parties' agreement. (Ill. Rev. Stat. 1979, ch. 26, par. 2—202.) No such finding appears of record here, so we conclude that Rockdale correctly asserts that the final writing, the bill of sale, may be explained or supplemented with evidence of other terms, so long as those terms are consistent with the terms of the final writing. Rockdale concludes that because the bill of sale transferred "all headend electronics" as those words were explained by the letter offer to purchase the TV tower "intact," we must find that the agreement of the parties' calls for the transfer of all equipment necessary to make the tower operational.

■■■ Appellees read the same bill of sale and find language wherein the Seller purports to transfer only such "right, title and interest" as he may possess, thereby negativing the intent to transfer "all headend electron-

ics." In the sale of goods there is a warranty given by the seller that the title conveyed shall be good. (Ill. Rev. Stat. 1979, ch. 26, par. 2—312(1)(a).) This warranty of title may be excluded or modified "by specific language * * * which give[s] the buyer reason to know that the person selling * * * is purporting to sell only such right or title as he * * * may have." (Ill. Rev. Stat. 1979, ch. 26, par. 2—312(2).) In the instant case, we have considered the language in the bill of sale relied on by the appellee, and after reviewing the published cases, we find that such language lacks the specificity required by section 2—312(2). (*Sunseri v. RKO-Stanley Warner Theatres, Inc.* (1977), 248 Pa. Super. 111, 374 A.2d 1342; *Jones v. Linebaugh* (1971), 34 Mich. App. 305, 191 N.W.2d 142; J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 304-05 (1972).) Precise and unambiguous language must be used to exclude a warranty of title, and the language in the bill of sale *sub judice* fails that test.

Specific langauge is not the only method of excluding a warranty of title from the sale of goods. If there are "circumstances which give the buyer reason to know that the person selling * * * is purporting to sell only such right or title as he * * * may have" (Ill. Rev. Stat. 1979, ch. 26, par. 2—312(2)), then the buyer cannot be heard to complain that he received less than he bargained for. In the instant case, evidence of the purported March 21 conversation between Spadora and Kraus was offered without objection. That evidence, to the effect that Rockdale would receive only such electronic equipment as City left behind, clearly puts Rockdale on notice that Community was selling only such right and title in the headend equipment as it had after the sale to City. We defer to the finding of the circuit court that the testimony was credible regarding the March 21 conversation, and with such a finding, that court's judgment pursuant to section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110 par. 64(3)) was not improper. See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.

Finally, the appellant Rockdale contends that error occurred in the trial of this cause when it was not permitted to interrogate George Spadora under the provisions of section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). Spadora was, at the time of the negotiation and sale, an employee of Community. He was also named as a defendant in Rockdale's complaint, although service of summons was never completed on him. The appellant suggests that the treatment of Spadora as its witness constituted reversible error. We disagree.

Section 60 applies only when the witness involved is an adverse party or an agent of an adverse party. While Spadora was an agent of Community in 1977, there was no showing at the hearing below that he continued in that capacity. Section 60 contemplates that agency status is

determined at the time of trial. (*Bituminous Casualty Corp. v. City of Harrisburg* (1942), 315 Ill. App. 243, 42 N.E.2d 971), and it follows that Spadora was not properly qualified as an agent of an adverse party.

 Neither was Spadora a party in his own right. Although named as a defendant, he was unserved. A party according to section 60 is one "for whose immediate benefit the action is prosecuted or defended." No action against Spadora was being defended as no personal jurisdiction over him had been obtained, either by the coercive power of a summons or by the consensual authority of a voluntary appearance. A party by being present in court and testifying as a witness, with no further action by the witness or his attorney, does not generally appear so as to give the court jurisdiction over his person. *Brown v. VanKeuren* (1930), 340 Ill. 118, 172 N.E. 1; 3 Ill. L. & Prac. *Appearances* §2 (1953); *cf.* Ill. Rev. Stat. 1979, ch. 38, par. 156—1 *et seq.* (criminal proceeding.)

Having read and considered the briefs of counsel as well as the authorities cited therein, and for the reasons hereinbefore set forth, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

HEIPLE and STOUDER, JJ., concur.