No. 2--07--0047

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| GMB FINANCIAL GROUP, INC., | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--CH--110 |
| | ) | |
| MICHELE MARZANO, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | Honorable |
| (Northstar Condominium Association, | ) | Michael T. Caldwell, |
| Defendant). | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

In this mortgage foreclosure action, defendant, Michele Marzano, appeals the orders of the trial court (1) granting the motion of plaintiff, GMB Financial Group, Inc., to strike defendant's motion to quash service of process and vacate the court's default judgment of foreclosure; and (2) confirming the sale of the subject property. We affirm.

I. BACKGROUND

On February 1, 2006, plaintiff filed a complaint to foreclose mortgage against defendant. After defendant failed to timely answer or file an appearance, plaintiff sought and obtained a default judgment of foreclosure and order of sale. A judicial sale was set for September 14, 2006. On September 14, defendant, by attorney Scott Bentley, filed an emergency motion to stay the sale. The trial court granted the motion and scheduled the sale for October 13. On October 13, the trial court

entered an "agreed order" staying the sale until October 31. (The order states that it was entered on defendant's motion but no such motion appears in the record.) On October 26, defendant, again by attorney Bentley, filed another motion to stay the sale. The motion recited that the sale was currently scheduled for November 2 (not October 31 as stated in the October 13 order). The trial court denied the motion. The next document appearing in the record is a November 2, 2006, order of the trial court stating:

"This case coming on the oral motion of defendant, the court being fully advised,

It is hereby ordered--

That since no evidence of service of process upon defendant being filed, the foreclosure sale set for today is stayed until November 17, 2006[,] under the same terms and conditions, and a status as to service is set for November 16, 2006, at 9:00 a.m."

On November 6, plaintiff filed a motion to vacate the November 2 order, contending that there were no grounds for doubting the court's jurisdiction over defendant. The court moved the status hearing from November 16 to November 14. On November 14, attorney Michael Cortina entered an appearance for defendant. Over plaintiff's objection, the court granted defendant leave to file a motion to quash service of summons. The court set the motion for a hearing on November 17. In the motion, defendant asserted that she was never served with a summons and complaint in the action and therefore the court lacked personal jurisdiction over her when it entered the default judgment.     On November 17, plaintiff filed a motion to strike and dismiss defendant's motion to quash. Defendant was first given a copy of the motion at the hearing that morning. She opposed the filing of the motion in light of the lack of notice. Impliedly rejecting her complaint, the court gave defendant time to review the motion to strike and then took argument on both that motion and

the motion to quash. The arguments of the parties concentrated on whether defendant's filings in the case after the default judgment but before her motion to quash constituted a waiver of any objection based on lack of personal jurisdiction. Plaintiff argued:

"They had been into court, Judge, three times on a motion to stay the sale. That waives the issue pursuant to [section 2--301 of the Code of Civil Procedure (735 ILCS 5/2--301 (West 2006))], pursuant to just about every Supreme Court case you want to come up with and--and this is as basic as it gets, Judge, you can't come into court and participate and then say, oh, by the way, everything we've done here I've availed myself to [sic] the court's jurisdiction but everything--you didn't have jurisdiction, it was improper. You can't do it."

In response, defendant cited J.C. Penney Co. v. West, 114 Ill. App. 3d 644 (1983). Defendant provided the court with a copy of the case and noted that she had previously given plaintiff a copy. Defendant argued that, under J.C. Penney, an implied waiver of personal jurisdiction has effect only prospectively and so her filings prior to the motion to quash did not deprive her of the right to challenge personal jurisdiction with respect to the prior default judgment. In reply, plaintiff again cited section 2--301 of the Code of Civil Procedure (Code) (735 ILCS 5/2--301 (West 2006)). Plaintiff argued that the statute "says if you do anything other than file a motion to quash service on your initial appearance, [personal jurisdiction] is waived."

The trial court granted the motion to strike, reasoning that defendant "submitted herself to the court's jurisdiction by her previous motions to stay [and] continue Judicial Sale." The trial court also noted that the order was "final and appealable."

The subject property was sold on November 17, 2006. Plaintiff thereafter filed a motion to confirm the sale. At the January 9, 2007, hearing on the motion, defendant objected that plaintiff failed to provide the special notice required by section 15--1507(c)(4) of the Illinois Mortgage Foreclosure Law (Mortgage Law) (735 ILCS 5/15--1507(c)(4) (West 2006)) where a judicial sale is postponed 60 days or more beyond the original date for sale. The trial court rejected defendant's argument and, in a written order dated January 9, confirmed the sale. Defendant filed her notice of appeal on January 10.

## II. ANALYSIS

Defendant challenges the trial court's orders granting plaintiff's motion to strike her motion to quash and confirming the judicial sale.

### A. Jurisdiction

As a preliminary matter, plaintiff argues that we have no jurisdiction over the order granting the motion to strike, because the trial court designated the order as final and appealable yet defendant did not appeal within 30 days of the order. See 155 Ill. 2d R. 303(a)(1) ("The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from"). The trial court's characterization of the order as final and appealable did not make it so. See Djikas v. Grafft, 344 Ill. App. 3d 1, 14 (2003) ("it is well settled that a trial court's designation of an order as final and appealable does not in itself render an order final and appealable"). By its nature the order did not have the requisite finality. "A judgment ordering the foreclosure of a mortgage is not final and appealable until the court enters orders approving the sale and directing the distribution." In re Marriage of Verdung, 126 Ill. 2d 542, 555 (1989). The grant of the motion to strike was an intermediate order in a process that did not culminate for purposes of

appeal until the January 9, 2007, order confirming the sale. Defendant appealed well within 30 days of the January 9 order, and therefore we have jurisdiction to review the prior order granting the motion to strike.

### B. Notice of the Motion to Strike

We turn to the merits of this appeal. Defendant proposes two grounds for reversing the trial court's order granting plaintiff's motion to strike. First, defendant argues that the order is voidable because she was not served with a copy of the motion until the November 17 hearing. Second, on the substance of the order, defendant argues that the trial court erred in holding that her participation in the case after the default judgment waived any objection she might have had that the court lacked personal jurisdiction over her when it entered the default judgment. We address these arguments in turn.

On the notice issue, defendant asserts that it was improper for the trial court to hear the motion to strike when she was not provided a copy until the November 17 hearing. Defendant cites Supreme Court Rule 104(b) (134 Ill. 2d R. 104(b)), which provides: "Pleadings subsequent to the complaint, written motions, and other papers required to be filed shall be filed with the clerk with a certificate of counsel or other proof that copies have been served on all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead." Defendant complains of the "harm and prejudice [she] faced because of the unfair surprise and lack of adequate time to prepare a response." She asserts that she deserved "ample time to prepare a statement and a formal objection" but instead was "forced to respond extemporaneously during a previously scheduled court call for an entirely different motion [the motion to quash service of process]." Defendant acknowledges that the court provided her time to review the motion, but maintains that

"[r]eviewing a motion in the hallway for ten minutes is not the same as having proper notice and the ability to digest the arguments, research cited authorities and respond, in writing, to the motion."

As defendant recognizes, the failure to provide notice rendered the court's order voidable, not void. In Larson v. Pederson, 349 Ill. App. 3d 203, 207 (2004), we held, in fidelity to our supreme court's decision in Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325 (2002), that "[a] party may attack a judgment as void only when jurisdiction is totally wanting." We acknowledge that we held in In re A.W., 343 Ill. App. 3d 396, 399 (2003), that "[a]n order entered without notice is void" even where the court has jurisdiction over the parties and the subject matter. We disavow that holding, together with its ancestors and descendants (see, e.g., Mara v. Bertholdt, 126 Ill. App. 3d 876, 881 (1984)), as illegitimized by Belleville Toyota, the latest in a long line of cases holding that an order is void only where the court lacked " 'inherent power' " to enter it (In re Marriage of Mitchell, 181 Ill. 2d 169, 177 (1998), quoting In re Estate of Steinfeld, 158 Ill. 2d 1, 12 (1994)). As the supreme court explained in People v. Davis, 156 Ill. 2d 149, 157 (1993):

"Clearly, the infringement of certain fundamental rights, like due process and equal protection, is constitutionally impermissible. However, although violation of such rights may present a proper subject for an exercise of the court's jurisdiction, the rights do not, themselves, vest a court with subject matter jurisdiction. See 21 C.J.S. Courts §9 (1990) (jurisdiction is subject which relates to power of court and not to rights of parties).

Our constitution confers upon the circuit courts a general grant of authority to hear and decide all matters of controversy. Such jurisdiction is not defined by the propriety of the court's judgments. 'There are many rights belonging to litigants--rights which a court may not properly deny, and yet which if denied do not oust the jurisdiction or render the

proceedings absolutely null and void.' (Humphries v. District of Columbia (1899), 174 U.S. 190, 194, 43 L. Ed. 944, 945, 19 S. Ct. 637, 639.)"

Because the challenged order is voidable, not void, "the determining factor is not the absence of notice but whether there was any harm or prejudice to the nonmoving party." In re Rehabilitation of American Mutual Reinsurance Co., 238 Ill. App. 3d 1, 11 (1992). Prejudice, moreover, must be real or "actual," not just possible. See Schlenz v. Castle, 132 Ill. App. 3d 993, 1014 (1985) (though served with request for ruling on previously filed motion less than 17 hours prior to hearing on request, plaintiffs "allege[d] no actual prejudice to them as a result of the untimely notice," and likely could not show any, because the motion in question was filed almost eight months earlier). Defendant, who has had time since the November 17 hearing to analyze the motion to strike, has not specified how her approach at the hearing would have differed had she received proper notice. She fails to state what additional arguments she would have brought or what additional authorities she would have cited. While this omission alone is fatal to her claim, we are also skeptical that defendant could show prejudice even if she tried. From our review of the November 17 hearing, it seems defendant's preparation of her motion to quash positioned her well to argue against the motion to strike even without advance notice. Defendant was conversant on waiver of personal jurisdiction, the core issue of the motion to strike, and she directed the court's attention to J.C. Penney, a seminal First District case on that issue. Defendant discussed the case in detail and even had a copy on hand for the trial court. Because defendant does not explain with any particularity how her preparation was compromised by the inadequate notice, we reject her complaint.

C. Waiver of Personal Jurisdiction

Defendant challenges the trial court's conclusion that her repeated attempts to stay the judicial sale were an implied waiver of any objection that the court lacked personal jurisdiction when it entered the prior default judgment. According to defendant, a party's implied waiver of personal jurisdiction applies only prospectively and does not extend to a prior judgment that was entered before the party made any appearance.

A court acquires personal jurisdiction over a party only "by the coercive power of a summons or the consensual authority of a voluntary appearance." Rockdale Cable T.V. Co. v. Spadora, 97 Ill. App. 3d 754, 758 (1981). " '[A] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally.' " Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 103 (2002), quoting Barnard v. Michael, 392 Ill. 130, 135 (1945).

For what constitutes a "voluntary appearance" (Spadora, 97 Ill. App. 3d at 758) by which a party concedes the court's jurisdiction over her, we look to section 2--301 of the Code, entitled "Objections to jurisdiction over the person." Subsections (a) and (a--5) of section 2--301 provide:

"(a) Prior to the filing of any other pleading or motion other than a motion for extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process. Such a motion may be made singly or included with others in a combined motion, but the parts of a combined

motion must be identified in the manner described in section 2--619.1 [(735 ILCS 5/2--619.1 (West 2006))].  ***

(a--5) <u>If the objecting party files a responsive pleading or a motion (other than a motion for an extension of time to answer or otherwise appear) prior to the filing of a motion in compliance with subsection (a), that party waives all objections to the court's jurisdiction over the party's person.</u>"  (Emphasis added.)  735 ILCS 5/2--301(a), (a--5) (West 2006).

As we recently noted in <u>KSAC Corp. v. Recycle Free, Inc.</u>, 364 Ill. App. 3d 593, 594 (2006), section 2--301 was amended effective January 1, 2000.  The former section 2--301(a) distinguished between "special" and "general" appearances:

"(a) Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant.  A special appearance may be made as to an entire proceeding or as to any cause of action involved therein.  Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance."  735 ILCS 5/2--301(a) (West 1998).

Under the case law at the time, a general appearance "was held to waive all objections to personal jurisdiction and subject the party to the authority of the court." <u>KSAC</u>, 364 Ill. App. 3d at 594.  The amended section 2--301(a), and the entirely new section 2--301(a--5),

"contain[] an explicit waiver provision that is narrower than the prior rule that waiver occurred if a party made a general appearance.  By its terms, the statute now provides for waiver of an objection based on personal jurisdiction only if the party files a responsive pleading or a motion (other than seeking an extension of time to answer or otherwise appear)

before filing a motion asserting the jurisdictional objection. Notably, there is no provision that a 'general appearance,' as such, results in waiver." KSAC, 364 Ill. App. 3d at 595.

Defendant does not dispute that, by filing her motions to stay the judicial sale, she "waive[d] all objections to the court's jurisdiction over [her] person" (735 ILCS 5/2--301(a--5) (West 2006)). Given the language of the statute, she could hardly maintain otherwise. The motions were not for an extension of time to answer or otherwise appear, and they were not coupled with a motion disputing the court's jurisdiction over her (she did not file such a motion until later).

Defendant's argument concerns rather the temporal reach of a waiver of personal jurisdiction under section 2--301(a--5). She claims that both preamendment and postamendment cases hold that "void judgments cannot be validated retroactively by any appearance" (emphasis added), and so a waiver of personal jurisdiction under section 2--301(a--5) applies only prospectively. Defendant overstates the preamendment rulings, which, as we will show, recognized a significant exception to the general bar on retroactivity of personal jurisdiction. See, e.g., Sullivan v. Bach, 100 Ill. App. 3d 1135, 1142 (1981) ("[A]n appearance subsequent to judgment may be construed as submission to the court's jurisdiction for retroactive validation of a prior judgment where the defendant acts to accept the benefits of the judgment"). As we will also show, the general hostility of these cases to the notion of retroactive waiver of personal jurisdiction was natural given that section 2--301 was different in a crucial respect before the 2000 amendments. This change, inexplicably, has gone unnoticed in courts resolving waiver claims governed by the current section 2--301.

We begin our analysis by considering the statutory language itself. See Bigelow Group, Inc. v. Rickert, 377 Ill. App. 3d 165, 169 (2007) ("The cardinal rule of statutory interpretation is to ascertain and give effect to the legislative intent, and the best indication of the legislative intent is

the language used in the statute"). Defendant's only engagement with the actual text of the current section 2--301 is her ambiguous remark that "[a]ny waiver of jurisdictional issues as stated in [section 2--301] only apply [sic] to pre-judgment appearances." (Emphasis added.) By this, we presume, defendant does not mean that a postjudgment appearance, say a motion to vacate a default judgment, can never amount to a waiver of personal jurisdiction, for courts are in full agreement that such a motion may confer jurisdiction going forward. See, e.g., Sarkissian, 201 Ill. 2d at 132 (Thomas, J., dissenting) ("the filing of a general appearance does constitute a submission to the trial court's jurisdiction on a prospective basis" (emphasis in original)); J.C. Penney, 114 Ill. App. 3d at 647 (by attacking the default judgment, "defendant submitted himself to the jurisdiction of the court, but only prospectively"); Sullivan, 100 Ill. App. 3d at 1141 (the defendant's attack on the default judgment "serve[d] only to submit [him] to the court's jurisdiction as of the date he appeared").

Defendant means, rather, that the text of section 2--301 does not provide for implied waiver of personal jurisdiction with respect to prior judgments. Defendant cites no particular phrase in section 2--301 to support this reading, and really there is no text to support it. Section 2--301 provides that the first pleadings or motions that a defendant files in a case may, depending on their character, constitute a "waive[r] [of] all objections to the court's jurisdiction over the party's person" (735 ILCS 5/2--301(a--5) (West 2006)). If the text addressed only pleadings or motions filed by a defendant prior to a judgment, then a fortiori there would be no question of a waiver extending back to a judgment. The statute, however, is not restricted to pleadings or motions filed at any particular time in a proceeding. Just as important, the text lacks any temporal restriction on the waiver; it works prospectively and retroactively. Therefore, we see no inkling in the statutory language itself for concluding that a party's "waive[r] [of] all objections to the court's jurisdiction over the party's

-11-

person" is anything short of a comprehensive waiver that applies both prospectively and retroactively to prior judgments entered without any prior appearance by the party in the proceeding.

Tellingly, the former section 2--301 did contain a restriction along the lines defendant has in mind. After defining "special appearance," the former section 2--301 provided: "Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance." (Emphasis added.) 735 ILCS 5/2--301(a) (West 1998). A general appearance "was held to waive all objections to personal jurisdiction and subject the party to the authority of the court." KSAC, 364 Ill. App. 3d at 594. The statute said nothing of appearances entered after judgment. The implications of this were noticed by preamendment courts, including this court in Sullivan.

In Sullivan, a default judgment was entered against the defendant for his failure to appear. The defendant thereafter filed two motions to vacate the default judgment. In the first motion, which the defendant filed along with a general appearance, the defendant claimed he had a meritorious defense to the action and also challenged the excessiveness of the award. The trial court denied the motion. In the second motion, brought several months later, the defendant alleged that the court lacked jurisdiction over him when it entered the default judgment. The trial court denied this motion as well, reasoning that the defendant's filing of a general appearance waived any objection that the court lacked personal jurisdiction to enter the default judgment. Sullivan, 100 Ill. App. 3d at 1136-37.

The defendant appealed the denial of his motions, and we reversed. We held that neither the defendant's general appearance nor his motion attacking the substance of the default judgment amounted to a waiver of personal jurisdiction with respect to the default judgment. We considered separately the general appearance and the first motion to vacate. As for the general appearance, we

explained it could not have constituted a waiver of personal jurisdiction, because it was entered after the default judgment. We noted that section 20 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 20), the predecessor of the former section 2--301, provided: "Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance." (Emphasis added.) Sullivan, 100 Ill. App. 3d at 1140. (We will address below Sullivan's treatment of the first motion to vacate.)

Other courts applying the former section 2--301, or an identical predecessor, found the "prior to judgment" phrase decisive on the issue of retroactive waivers. For instance, in Mason v. Freeman National Printing Equipment Co., 51 Ill. App. 3d 581, 586 (1977), the First District refused to characterize the defendant's motion to vacate a default judgment as a general appearance. The court reasoned that, "under a literal reading of [section 2--301], the defendant did not make a general appearance since his petition was filed after judgment." (Emphasis omitted.) Mason, 51 Ill. App. 3d at 586; see also Weierman v. Wood Landscaping, Inc., 259 Ill. App. 3d 300, 302 (3d Dist. 1994) (where the defendant, in lieu of answering the complaint, filed a motion to vacate a default judgment but no such judgment had been entered, he submitted to the court's jurisdiction under section 2--301 because his appearance preceded any judgment by the court); Schlosser v. Schlosser, 218 Ill. App. 3d 943, 950 (1st Dist. 1991) ("A motion to dismiss constitutes a general appearance subjecting the moving party to the jurisdiction of the court. [Citation.] The appearance in this case may have been late, but it was prior to judgment and a general appearance nonetheless").

Under the former section 2--301, a general appearance by definition could not occur after judgment. Thus, it was impossible for a party's appearance after judgment to trigger a waiver of personal jurisdiction with respect to that judgment. As we note below, some preamendment courts,

like this court in Sullivan, had policy reasons independent of the statutory text for refusing to acknowledge a postjudgment retroactive waiver of personal jurisdiction. However, these courts uniformly implied that the phrase "prior to judgment" was the only textual bar to finding a postjudgment waiver of personal jurisdiction. "Where the legislature amends a statute, striking words, it is to be concluded that it deliberately intended to change the law." People v. Bloomberg, 378 Ill. App. 3d 686, 688 (2008). If the absence of that phrase in the current section 2--301 is alone not enough to persuade that a party's waiver of personal jurisdiction may now extend to a prior judgment, section 2--301(a--5) broadly states that a party "waives all objections to the court's jurisdiction." (Emphasis added.) 735 ILCS 5/2--301(a--5) (West 2006).

Not all of Sullivan's analysis, we should note, relied on section 20 of the Civil Practice Act, the predecessor of the former section 2--301. After holding that the defendant's general appearance did not constitute a waiver of personal jurisdiction, Sullivan discussed whether this was also the case with the defendant's first motion to vacate, which attacked the substance of the default judgment. The court held that the motion to vacate did not trigger a waiver, but the court did not rely on the statute:

"Strict application of the rule on special appearances to prejudgment appearances still allows a defendant the opportunity to defend on the merits. Where the defendant is found to have voluntarily submitted himself to the court's jurisdiction prior to judgment, the court has personal jurisdiction at the time it enters the judgment order, but the same logic serves only to submit a defendant to the court's jurisdiction as of the date he appeared, not retroactively as of the ex parte judgment, where his appearance comes after judgment is entered. [Citation.] A defendant's attempts to set aside a void judgment subsequent to the entry of

that judgment are not to be considered as giving the court original jurisdiction to enter the judgment; doing so deprives the defendant of his day in court. [Citations.]" (Emphasis added.) Sullivan, 100 Ill. App. 3d at 1142.

To that emphasized proposition Sullivan immediately added this proviso:

"However, an appearance subsequent to judgment may be construed as submission to the court's jurisdiction for retroactive validation of a prior judgment where the defendant acts to accept the benefits of the judgment. [Citations.]" Sullivan, 100 Ill. App. 3d at 1142.

For this statement, the court cited the supreme court's decision in Lord v. Hubert, 12 Ill. 2d 83 (1957). Applying these principles, Sullivan held that, though the basis for the defendant's motion to vacate was not that the court lacked personal jurisdiction but that he had a meritorious defense, it nonetheless was "evident that defendant had but a single purpose, to vacate the ex parte judgment against him." Sullivan, 100 Ill. App. 3d at 1142. As the defendant "did not *** in any way ratify and admit the validity of the prior judgment by accepting its benefits," his actions were not an admission that the court had personal jurisdiction to enter the default judgment. Sullivan, 100 Ill. App. 3d at 1142. In so concluding, we again cited Lord.

Section 20 did not figure in this part of the analysis even though the statute facially controlled. The issue, after all, was whether an "appearance [that] comes after judgment is entered" may retroactively confer personal jurisdiction for purposes of that judgment. Sullivan, 100 Ill. App. 3d at 1142. Section 20 spoke directly to that issue. Sullivan relied instead on policy reasons and an estoppel-like analysis. We venture that Sullivan eschewed section 20 in deference to Lord, which, in apparent contradiction of section 20, recognized an exception to the general bar on retroactivity

of personal jurisdiction, for cases where the defendant "acts to accept the benefits of the judgment" (Sullivan, 100 Ill. App. 3d at 1142).

As it happens, deference to Lord was needless because the version of section 20 that governed the conduct in Lord did not provide that general appearances could occur only "prior to judgment." That version of the statute provided:

"Every appearance in a civil action, whether general or special and whether in person or by attorney, shall be made in writing, by filing a pleading or motion in the cause, which said pleading or motion shall state with particularity an address where service of [process] or papers may be made upon the party or attorney so appearing. A special appearance may be made by a party, either in person or by attorney, and if made by attorney, shall not be deemed to be a general appearance." Ill. Rev. Stat. 1945, ch. 110, par. 144.[1]

Section 20 was amended effective January 1, 1956, to include the phrase "prior to judgment." Section 20 retained its wording when it was codified as the former section 2--301 of the Code (Ill. Rev. Stat. 1981, ch. 110, par. 2--301). Section 2--301 in turn remained the same until the 2000 amendments. Although Lord did not cite any statutory authority for its holding, its pronouncements are consistent with the absence of a statutory restriction on the timing of general appearances. For instance, Lord said:

"[T]hough not named as a party in the original action, a person may subsequently *** become bound by the foregoing proceedings as if initially served. [Citations.] Although the court participation may come in many forms, suffice to say that any action taken by the

_____

[1]We have no comment on the distinction being made here. What concerns us is the absence of a temporal restriction on general appearances.

litigant which recognizes the case as in court will amount to a general appearance unless such action was for the sole purpose of objecting to the jurisdiction." Lord, 12 Ill. 2d at 87. Sullivan should have discounted Lord as wholly inapposite because of the statutory change. Instead, evidently oblivious to the change, Sullivan distinguished Lord awkwardly on the facts,[2] disregarding the broad sweep of its dictates because (we assume) they appeared to contravene section 20 as it was worded at the time of Sullivan.

No matter the process by which Sullivan came to hold that a defendant retroactively waives personal jurisdiction with respect to a prior judgment only if the defendant "acts to accept the benefits of the judgment," that holding is abrogated by the amendments to section 2--301. The amendments render waiver a matter of procedural form, independent of substantive concepts like

---

[2]The plaintiff in Lord challenged the judgment in a partition suit to which he was not a party. Years earlier, the plaintiff had made a postjudgment appearance in the partition suit and moved the court to terminate a trust created by the court and pay him the proceeds. Though the plaintiff now claimed that the court lacked personal jurisdiction over him when it partitioned the land, the supreme court held that his objection was waived because he "not only acknowledged the existence of the prior partition proceedings but by seeking the benefits thereof also admitted their validity." Lord, 12 Ill. 2d at 86. Sullivan seized on the mention of "benefits" and saw Lord's holding as subsuming only those cases where a party "acts to accept the benefits of the judgment." Sullivan, 100 Ill. App. 3d at 1142. Interestingly, with the 2000 amendments, section 2--301 reassumed the temporal scope its predecessor, section 20, had at the time of Lord. That is, under the current section 2--301, almost "any action taken by the litigant which recognizes the case as in court" will result in the litigant "becom[ing] bound by the foregoing proceedings as if initially served" (Lord, 12 Ill. 2d at 87).

"benefit." This is not to deny, of course, that an action of the procedural form necessary to trigger waiver under the current section 2--301 might in substance be aimed at deriving a "benefit" from the prior proceedings. We mean only that an action need not meet any such substantive criteria to trigger waiver under section 2--301 as amended.

The current text of section 2--301 leaves us no avenue but to conclude that, when defendant filed her first motion to stay the judicial sale, which was not a motion "for an extension of time to answer or otherwise appear" (735 ILCS 5/2--301(a) (West 2006)) and was not accompanied by a motion challenging personal jurisdiction, she waived any objection that the trial court lacked personal jurisdiction over her when it entered the prior default judgment.

In reading section 2--301 as allowing retroactive waiver of personal jurisdiction, even as to a prior judgment, we are in agreement with Deutsche National Bank v. Burtley, 371 Ill. App. 3d 1 (1st Dist. 2006), the only case we found that applies the current section 2--301 to postjudgment conduct. In Burtley, a mortgage foreclosure action, the plaintiff moved for a default judgment based on the defendant's failure to appear or answer the complaint. When the defendant appeared pro se, the trial court continued the plaintiff's motion for a default judgment. Later, when the defendant failed to answer the complaint, the trial court entered a default judgment and order of sale. Claiming he had a buyer for the property, the defendant obtained several postponements of the sale. After weeks of postponements, the trial court rejected further attempts to postpone the sale. The sale occurred, and the trial court confirmed the sale. The defendant then moved to dismiss the foreclosure suit for lack of jurisdiction because he was never properly served with the foreclosure complaint. The defendant later appeared by counsel and filed a motion to vacate the confirmation of the sale but did not challenge jurisdiction. The trial court denied the motion to dismiss the

foreclosure action. The defendant then filed an amended motion to vacate the confirmation of the sale but again did not challenge jurisdiction. The trial court denied the amended motion. On appeal, the defendant renewed the jurisdictional argument. The court rejected it:

"[B]y the time the circuit court denied [the defendant's] last request for a stay (by our count his thirteenth appearance), personal jurisdiction over [the defendant] was no longer a question. [Citation.]

Even if [the defendant's] pro se involvement in this case [for two years] was not sufficient to invoke the circuit court's jurisdiction, upon counsel's filing of the motions to vacate, without filing a motion to challenge jurisdiction, 'all objections to the court's jurisdiction over the party's person' were waived. 735 ILCS 5/2--301(a--5) (West 2004)." Burtley, 371 Ill. App. 3d at 9-10.

Evidently, the Burtley court interpreted section 2--301's phrase, "all objections to the court's jurisdiction over the party's person," as including jurisdictional objections to a prior judgment.[3]

_____

[3]Curiously, Burtley did not apply section 2--301 to find that the defendant's multiple motions to postpone the sale amounted to a waiver, either individually or cumulatively. That any of these motions was sufficient by itself to trigger waiver seems patently clear, for the motions were not "for an extension of time to answer or otherwise appear" (735 ILCS 5/2--301(a) (West 2006)). In our view, Burtley's determination of waiver based on the cumulative effect of several actions is unnecessary and misleading. Waiver is an "all or nothing" situation under section 2--301: if a litigant takes any single action, other than move for an extension of time to plead or otherwise appear, without also challenging personal jurisdiction, waiver is triggered.

The Burtley court also should have been more precise as to when waiver occurred. The

Defendant urges us not to apply the statute as written. She contends that the amendments to section 2--301 "were specifically made to remedy the problems with special appearances creating inadvertent waivers." The sparse legislative history does suggest that the amendments were intended to eliminate a perceived pitfall inherent in the distinction between special and general appearances.[4] That this was the sole purpose of the amendments, as defendant asserts, is neither confirmed nor denied by the legislative history. Defendant is sure that the legislature cannot have intended to "trade one trap for another," as she phrased it at oral argument. Defendant was alluding to the canon that a court "must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results" (Vine Street Clinic v. HealthLink, Inc., 222 Ill. 2d 276, 282 (2006)). We are not convinced that a comprehensive waiver of personal jurisdiction is unduly harsh either in itself or as applied by the statute. In no manner does it compare to the distinction between special

---

defendant's initial motion to vacate the confirmation of the sale did not trigger waiver, because there was then pending a jurisdictional objection. However, when the defendant amended the motion after his jurisdictional objection was rejected, he waived any further jurisdictional objection.

[4]There was but one mention of the amendments on the floor of the Illinois General Assembly. Senator Hawkinson said:

"This bill amends the Code of Civil Procedure dealing with special appearances. It is not an initiative of the Illinois State Bar Association but it was suggested by the Bar Association. It's a cleanup. It is designed to prevent an unknowing waiver. When you file a motion in court, before you file your special appearance, it allows you to file your special appearance and other motions at the same time." 91st Ill. Gen. Assem., Senate Proceedings, March 11, 1999, at 42-43 (statements of Sen. Hawkinson).

and general appearances, which set a true pitfall in at least two ways. First, what constituted a general appearance, and thus a waiver of personal jurisdiction, was decided on a case-by-case basis. See Pearson v. Lake Forest Country Day School, 262 Ill. App. 3d 228, 232 (1994) (" 'any action taken by [a] litigant which recognizes the case as in court will amount to a general appearance unless such action was for the sole purpose of objecting to the jurisdiction' "), quoting Lord, 12 Ill. 2d at 87. Second, courts read a lethal element of timing into the somewhat ambiguous text of section 2--301; a challenge to personal jurisdiction was deemed waived if the party made a general appearance simultaneously or if the general appearance was made subsequent to the jurisdictional challenge yet before the challenge was adjudicated by the trial court. See K. Beyler, The Death of Special Appearances, 88 Ill. B.J. 30 (2000). Section 2--301 now defines precisely what conduct amounts to a waiver of personal jurisdiction and preserves an objection to personal jurisdiction even if it is not ruled on before the objecting party commits an act that would otherwise constitute a waiver of the objection. See 88 Ill. B.J. at 32. Section 2--301 had caused litigants ongoing apprehension because of the abstract, evolving concept of a general appearance and because of the timing traps that courts read into the statute. In its current form, section 2--301 specifies with clarity what acts constitute a waiver. Moreover, a waiver of "all objections to the court's jurisdiction over the party's person" (emphasis added) (735 ILCS 5/2--301(a--5) (West 2006)) is naturally taken as comprehensive, applying both prospectively and retroactively. If the current section 2--301 had distinguished between partial and comprehensive waiver and left some uncertainty as to what conduct would trigger which kind of waiver, there might be a pitfall comparable to that which existed under the former statute. There is no such ambiguity, for the statute does not recognize degrees of waiver.

There is also no merit to the suggestion that the concept of a comprehensive waiver is intrinsically more absurd or unjust than the concept of a prospective waiver. Both are outgrowths of the concern for "prevent[ing] a party from simultaneously invoking and denying jurisdiction" (In re Marriage of Schuham, 120 Ill. App. 3d 339, 344 (1983)). Under the current section 2--301, unless the party simultaneously challenges personal jurisdiction with respect to a prior judgment in the action, she waives any such objection if (with limited exceptions) she acts in a manner that assumes the court had jurisdiction over her when it entered that prior judgment. Distilled down, defendant's argument amounts to a difference of values between her and the legislature, a controversy we have no business resolving.

Defendant also suggested at oral argument that, if the legislature had intended to provide for a postjudgment retroactive waiver of personal jurisdiction, it would not have placed a provision to that effect so early in the Code, which defendant sees as generally paralleling the progression of a civil case. This was something of a throwaway argument; there are several canons of statutory interpretation but none is based on mere logical aesthetics. The argument did bring to mind, however, a later provision in the Code, namely, section 2--1401 (735 ILCS 5/2--1401 (West 2006)), which expressly deals with attacks on judgments. Section 2--1401(f) provides: "Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief" (735 ILCS 5/2--1401(f) (West 2006)). This is a codification of the long-standing rule that a void order may be attacked at any time. See Barnard, 392 Ill. at 135. This rule does not support defendant here. That an attack on a void judgment is insulated from time pressures does not entail that it may not otherwise fail, either on the merits or by a concession of personal jurisdiction.

Having surveyed the case law, we find it remarkable that, of the several appellate court cases that address claims of retroactive waiver of personal jurisdiction governed by the current section 2--301, Burtley is one of only two decisions to even mention the statute. The other is C.T.A.S.S. & U. Federal Credit Union v. Johnson, No. 1--07--1828, slip op. at 4 (June 30, 2008). The remaining decisions resolve claims of waiver by simply reiterating principles from the preamendment decisions in Sullivan and in J.C. Penney, which adopted Sullivan's principles. See Mortgage Electronic Systems v. Gipson, 379 Ill. App. 3d 622, 629 (1st Dist. 2008), citing J.C. Penney, 114 Ill. App. 3d at 647, and Sullivan, 100 Ill. App. 3d at 1142; BA Mortgage, LLC v. Burgholzer, 339 Ill. App. 3d 911, 912 (2d Dist. 2003), citing Christiansen v. Saylor, 297 Ill. App. 3d 719, 723 (1998), citing Sullivan, 100 Ill. App. 3d at 1140-41. As for our supreme court, it has consistently endorsed the principles of Sullivan and J.C. Penney but has yet to decide a claim of retroactive waiver under the current section 2--301. See Verdung, 126 Ill. 2d at 547; see also Sarkissian, 201 Ill. 2d at 132 (Thomas, J., dissenting).

Turning to Johnson, we find that, though the court mentions the amendments to section 2--301, its reasoning is hardly more compelling than Gipson or Burgholzer. The Johnson court said:

"Section 2--301 has never been applied in a postjudgment proceeding to give a trial court retroactive jurisdiction or to validate orders entered without jurisdiction. Nor is there indication that the legislature intended to achieve this result when it amended section 2--301." (Emphasis added.) Johnson, slip op. at 4.

If the court means that section 2--301 has never, in any of its incarnations, been applied to find a postjudgment retroactive waiver of personal jurisdiction, then the court is doubly wrong. First, the court never mentions Lord, which applied a predecessor of section 2--301 to find a retroactive waiver

extending to a prior judgment.  Second, and more perplexingly, the court overlooks its own district's decision in Burtley, which relied partly on postjudgment conduct in finding a retroactive waiver under the current section 2--301.  Instead of these authorities, the Johnson court relies exclusively on cases applying the former section 2--301, whose phrase "prior to judgment" precluded postjudgment retroactive waiver.

As for Johnson's claim about legislative intent, our view is that the amendatory text is sufficient "indication" of an intent to allow for retroactive waiver.

Applying section 2--301 in its current form, we hold that defendant, by moving to postpone the judicial sale without also challenging the court's personal jurisdiction to enter the default judgment, waived personal jurisdiction with respect to that judgment.  Accordingly, the court did not err in striking defendant's motion to quash service of process and to vacate the default judgment.

### D. Notice of Sale

Defendant's final argument on appeal is that we must vacate the trial court's judgment confirming the sale of the property, because plaintiff did not comply with the notice requirements applicable when a judicial sale is postponed.  Section 15--1507(c)(2) of the Mortgage Law (735 ILCS 5/15--1507(c)(2) (West 2006)) requires that a judicial sale of foreclosed property be preceded by several public notices, with "the last such notice to be published not less than 7 days prior to the sale."  Section 15--1507(c)(4) (735 ILCS 5/15--1507(c)(4) (West 2006)) provides for yet another public notice where the sale is postponed:

"The party who gives notice of public sale in accordance with Section 15--1507(c) [(735 ILCS 5/15--1507(c) (West 2006))] shall again give notice in accordance with that Section of any adjourned sale; provided, however, that if the adjourned sale is to occur less

than 60 days after the last scheduled sale, notice of any adjourned sale need not be given pursuant to this Section.  In the event of adjournment, the person conducting the sale shall, upon adjournment, announce the date, time and place upon which the adjourned sale shall be held.  Notwithstanding any language to the contrary, for any adjourned sale that is to be conducted more than 60 days after the date on which it was to first be held, the party giving notice of such sale shall again give notice in accordance with this Section."  (Emphasis added.)

The emphasized requirement was triggered here because more than 60 days elapsed between the original sale date of September 14, 2006, and the adjourned date of November 17, 2006.  Plaintiff does not dispute that it failed to provide this additional public notice but asserts that the sale was nonetheless proper.  We agree.

In addition to public notice, section 15--1507 requires individual notice to "parties in the action" (735 ILCS 5/15--1507(c)(3) (West 2006)).  A party who fails to receive the individual notice "may, by motion *** made prior to confirmation of [the] sale, ask the court which entered the judgment to set aside the sale."  735 ILCS 5/15--1508(c) (West 2006).  In all other cases, "no sale *** shall be held invalid or be set aside because of any defect in the notice thereof or in the publication of same, or in the proceedings of the officer conducting the sale, except upon good cause shown."  (Emphasis added.)  735 ILCS 5/15--1508(d) (West 2006).

The distinction between these two types of notice was material to our decision in Cragin Federal Bank For Savings v. American National Bank & Trust Co. of Chicago, 262 Ill. App. 3d 115 (1994).  In Cragin, the mortgagors moved to vacate the trial court's confirmation of a foreclosure sale, because the proper number of public notices was not provided.  The mortgagee had successfully

bid $950,000 for the subject property, and a deficiency judgment of $337,738.90 was entered against the mortgagors. In response to the motion to vacate, the mortgagee submitted an appraisal that valued the property at $950,000. The trial court denied the motion to vacate. On appeal, the mortgagors argued that, due to the mortgagee's failure to provide all requisite public notices, "the [mortgagee] purchased the property for less than its value, thereby leaving [the mortgagors] liable for a substantial deficiency." Cragin, 262 Ill. App. 3d at 121. We agreed with the trial court that the mortgagors had not established "good cause" to overturn the sale under section 15--1508(d) of the Mortgage Law (735 ILCS 5/15--1508(d) (West 2006)). We noted that the mortgagors made no claim that they themselves were not notified of the sale per section 15--1507(c)(3) of the Mortgage Law (735 ILCS 5/15--1507(c)(3) (West 2006)). As for the flaws in the public notices, we held that they alone were not enough to constitute "good cause" for invaliding the sale. We recognized that "the sale of the property for substantially less than its actual value could constitute 'good cause' for setting aside the sale when coupled with the lack of complete compliance with the notice provisions." Cragin, 262 Ill. App. 3d at 121. We explained: "That the public sale did not attract a party willing to purchase the property for substantially its value would suggest that the notice was inadequate." Cragin, 262 Ill. App. 3d at 121. We held that, despite the "substantial" deficiency judgment, the mortgagors failed to show that the property was sold for substantially less than its actual value. Thus, they did not establish that the sale was vitiated by the failure to provide the proper public notice. Cragin, 262 Ill. App. 3d at 121.

Defendant does not dispute that she herself received notice of the sale. She has shown that plaintiff failed to post the final public notice required by the Mortgage Law, but, like the mortgagors in Cragin, she has not established that the property was sold for substantially less than its actual

value. In response to plaintiff's contention that defendant has not shown the requisite "good cause," defendant speculated in her reply brief that the failure to provide all requisite public notices may have lost potential bidders. Conjecture is not acceptable under Cragin. Not until her petition for rehearing has defendant made an argument based on the actual sale price of the property, but even here she fails. She states that "plaintiff bid the amount it claimed it was owed, which resulted in no deficiency judgment." This assertion does not tie the sale price of the property to its actual value. If anything, it suggests that defendant is on shakier ground than the mortgagors in Cragin, where even the fact of a substantial deficiency judgment was inadequate in itself to show that the property was sold for substantially less than its actual value. See Cragin, 262 Ill. App. 3d at 121. Relatedly, defendant suggests that, had there been proper notice, the bidding may have resulted in a surplus for her. Here again, defendant fails to show the required connection. The lack of a surplus does not equate to a sale for substantially less than the actual value of the property. Defendant, we conclude, has failed to make the proper showing under Cragin and therefore has not presented "good cause" for invalidating the sale.

Defendant maintains that we must strictly enforce the public notice requirement of section 15--1507(c)(4) of the Mortgage Law because the statute is in derogation of "common law strict foreclosure." However, defendant does not explain what manner of public notice was required under "common law strict foreclosure." The only authority she marshals for her broad interpretation of "good cause" is a quote from Northwest Diversified, Inc. v. Mauer, 341 Ill. App. 3d 27, 35 (2003), quoting Block v. Hooper, 318 Ill. 182, 187 (1925):

" 'The sale of one's property to satisfy his debt to another is a drastic remedy, and the provisions of the law by which it is brought about <u>must be strictly complied with</u> ***.' " (Emphasis added.)

Defendant omits the remainder of the sentence, which reads:

" 'and where this is not done, courts will, <u>where the price is inadequate</u>, allow redemption upon equitable terms though the [statutory] period of redemption has expired.' " (Emphasis added.) <u>Mauer</u>, 341 Ill. App. 3d at 35, quoting <u>Block</u>, 318 Ill. at 187.

Even the equitable right recognized by <u>Mauer</u> is conditioned upon a showing that the property was sold for an "inadequate" price at the foreclosure sale. Thus, <u>Mauer</u> hardly is authority for construing the public notice requirement in section 15--1507(c)(4) of the Mortgage Law as absolute.

For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

Affirmed.

ZENOFF, P.J., and BURKE, J., concur.