# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768

---

| | |
|---|---|
| Appellate Court Caption | F. JOHN CUSHING, Administrator *de bonis non* of the Estate of Claudia Zvunca, Deceased, Plaintiff-Appellant, v. GREYHOUND LINES, INC. and MOTOR COACH INDUSTRIES INTERNATIONAL, INC., Defendants-Appellants (Cristina Zvunca, a Minor, By Her Guardian *ad litem*, David J. Gubbins, Plaintiff; Wesley Jay Tatum, Defendant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-0768 |
| Filed | February 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a wrongful death action where plaintiff was already the administrator of the decedent's estate, letters of office had been filed and a probate estate had been opened, the trial court lacked authority to appoint a special administrator; therefore, the court's order making such an appointment was vacated as void, and so long as the appointed administrator retained that position, he had the sole right of action and control of the wrongful death suit filed on behalf of the deceased. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-3391 (previously No. 04-L-10431); the Hon. William H. Haddad, Judge, presiding |
| Judgment | Order vacated. |

Counsel on Appeal

Scott G. Golinkin, of Law Offices of Scott G. Golinkin, of Chicago, for appellant.

Edward M. Kay, Paul Bozych, Kimberly A. Hartman, and Paul V. Esposito, all of Clausen Miller P.C., of Chicago, for appellee Greyhound Lines, Inc.

David J. Gubbins, of Chicago, guardian *ad litem*.

Panel

PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion.

Justices McBride and Howse concurred in the judgment and opinion.

## OPINION

¶ 1    F. John Cushing, administrator *de bonis non* of the estate of Claudia Zvunca, deceased, appeals from the January 28, 2010 order of the circuit court of Cook County appointing MB Financial Bank, N.A., as special administrator of the estate of Claudia Zvunca. For the following reasons, we vacate the order.

¶ 2                    FACTUAL BACKGROUND

¶ 3    On January 15, 2002, Claudia Zvunca (decedent) was struck and killed by a Greyhound bus in Colorado. Her minor daughter, Cristina Zvunca (Cristina), who was eight years old at the time, witnessed the accident. Decedent's heirs were her husband, Tiberiu Klein, whom she had married in the fall of 2000, and Cristina. From these tragic, but relatively straightforward, facts arose 13 filed lawsuits, including legal malpractice suits, in various state and federal courts. In addition to the lawsuits, this matter has generated no fewer than 28 appeals filed in this court.

¶ 4                  PROCEDURAL BACKGROUND

¶ 5    At the outset, we note that the subsequent lengthy and somewhat confusing procedural history is in part the result of the simultaneous existence of two wrongful death actions based on the same death–the action underlying the instant appeal (Instant Illinois Action) and an action originally filed in Illinois, removed to federal court in Illinois, and transferred to federal court in Colorado (Colorado Action). Although we will confine our legal analysis to the narrow issue involved in this particular appeal, we believe that a comprehensive summary of the procedural background of this matter leading up to the removal of Cushing will provide context and allow for an enhanced understanding of the issue. Therefore, we have

taken judicial notice of court records in Colorado and Illinois, including relevant pleadings and court orders. We have also reviewed the briefs filed in two prior interlocutory appeals (Nos. 1-05-0701 and 1-05-1463) involving the Instant Illinois Action (No. 04 L 10431, renumbered on April 3, 2007 as No. 07 L 3391). We express no opinion regarding the merits of the underlying wrongful death action or any of the related actions, and our legal analysis will be limited to the propriety of the trial court's order appointing a special administrator.

¶ 6     First Complaint Filed (No. 02 L 5584) and Removed to Federal Court
                (Colorado Action)

¶ 7   On May 3, 2002, Tiberiu Klein, "individually and as Executor of the Estate of Claudia Zvunca," filed a wrongful death and survival action against Greyhound Lines, Inc. (Greyhound), and its driver, Wesley Tatum, only (No. 02 L 5584). Klein alleged in the complaint that he was Cristina's guardian and sought wrongful death damages *both* for himself and Cristina (paragraph 14 of the complaint alleged that both he and Cristina had "lost the companionship, love, [and] affection of their respective wife and mother"). Claudia had died intestate, however, and Klein had not been appointed representative of Claudia's estate. Neither had Klein been appointed special administrator. This deficiency was never addressed by an Illinois court, however, because Greyhound, on May 31, 2002, filed a notice of removal of that action to federal court based on diversity of citizenship. Greyhound then filed a *forum non conveniens* motion in federal court for the Northern District of Illinois, which was granted and the action was transferred to the District of Colorado. The law firm of Cogan, McNabola & Dolan, LLC (the Cogan firm) represented Klein in the Colorado Action.

¶ 8   On January 13, 2004, two days before the expiration of the statute of limitations, Klein filed a motion to amend his complaint to add as an additional defendant bus designer Motor Coach Industries International, Inc. (Motor Coach). (On January 15, 2004, as will be further discussed below, the Cogan firm filed an action in Illinois in the law division (No. 04 L 497).) On March 24, 2004, the Colorado court denied Klein's motion to amend his complaint to add Motor Coach. On April 15, 2005, the federal court denied defendants' motion to set a pretrial conference and jury trial and ruled that the action pending in Illinois took precedence over the action in Colorado.

¶ 9        First Probate Case (No. 03 P 8718)

¶ 10   In November 2003, Klein filed a petition in the probate division of the circuit court of Cook County to appoint Greg Marshall as the independent administrator of the decedent's estate. Mr. Marshall was a paralegal in the Cogan firm. The probate division granted Klein's petition on November 14, 2003 and letters of office were issued. (In 2005, Cushing replaced Marshall.)

¶ 11    Second Complaint Filed (No. 04 L 497) and Voluntarily Dismissed

¶ 12   On January 15, 2004, the Cogan firm, on behalf of Marshall, filed a wrongful death and

-3-

survival complaint in Cook County against Motor Coach (No. 04 L 497). On April 6, 2004, leave was granted to amend the complaint to add Greyhound and Tatum as defendants. On May 13, 2004, Greyhound and Tatum filed a motion to dismiss. The Cogan firm withdrew and the law firm of Clancy & Stevens (the Clancy firm) substituted as counsel for Marshall. (The Clancy firm also later replaced the Cogan firm as Klein's counsel in the Colorado Action.) In May 2004, this action was voluntarily dismissed.

¶ 13        Third Complaint Filed (No. 04 L 10431, later renumbered as 07 L 3391)
                                (Instant Illinois Action)

¶ 14        On September 14, 2004, the Clancy firm filed the Instant Illinois Action in the circuit court on behalf of Greg Marshall, as independent administrator of the estate of Claudia Zvunca, deceased, and Cristina Zvunca, a minor, by Paul Brent, as next friend against Motor Coach, Greyhound, and Tatum (No. 04 L 10431). Count I alleged strict liability/wrongful death against Motor Coach and sought recovery on behalf of both Klein and Cristina. Count II was a strict liability/survival count against Motor Coach. Count III alleged negligence/wrongful death against Motor Coach and sought recovery on behalf of both Klein and Cristina. Count IV was a negligence/survival count against Motor Coach. Count V alleged common carrier liability/wrongful death against Greyhound and Tatum but sought recovery for Cristina, but not for Klein. Count VI was a common carrier liability/survival count against Greyhound and Tatum. Count VII, brought by Paul Brent, on behalf of Cristina, alleged negligent infliction of emotional distress against MCI. Count VIII, also brought by Paul Brent, on behalf of Cristina, alleged negligent infliction of emotional distress against Greyhound and Tatum.

¶ 15        Meanwhile, in the Colorado Action, in October 2004, Klein moved for reconsideration of the 2002 order transferring the case to Colorado, and requested that the case be transferred back to the Northern District of Illinois. In the alternative, Klein sought a determination that Cristina's claim for damages was not at issue in the Colorado Action. On November 15, 2004, the Colorado court denied the motion to transfer, noting that the case had been pending for more than two years, was ready for trial, and that retransfer would be prejudicial to defendants. The court also ruled that any claim for damages sustained by Cristina *on her own behalf* was not an issue in the litigation in which she was not a party. (Unlike the Instant Illinois Action, the Colorado Action contained no counts regarding Cristina's emotional distress.) The court *specifically refused* to "issue an advisory ruling on the effects of a recovery in this case as to entitlement to wrongful death proceeds."

¶ 16        In November and December 2004, Greyhound filed several motions in the Instant Illinois Action including a motion to dismiss the complaint as duplicative of the Colorado Action; a motion to dismiss the wrongful death and survival claims as time-barred; a motion to sever the claims against Greyhound so that they could be transferred to Colorado; and a motion to stay, as an alternative to dismissing the action. The circuit court dismissed the survival count as time-barred but denied all of the other motions.

-4-

¶ 17

¶ 18 On March 18, 2005, Greyhound filed an interlocutory appeal from the denial of its motion to stay the proceedings. Greyhound argued that the trial court should have stayed this action pursuant to section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 2004)) because it was duplicative of the Colorado Action.

¶ 19 Meanwhile, in the Colorado Action, on April 5, 2005, Greyhound filed a second motion to set pretrial conference and jury trial. On April 15, 2005, the federal court in Colorado entered an order stating, in relevant part:

"[I]t appears that the action pending in Cook County, Illinois, in which Motorcoach Industries International, Inc., is an additional defendant on a product liability claim is going forward in the trial court and that the future of that litigation may be affected by appeals that are pending, including an appeal by Greyhound of the denial of its motion to stay the Cook County action and it appearing to this court that *because Motorcoach Industries International, Inc., could not be joined in this civil action because it would destroy diversity jurisdiction which was the basis upon which Greyhound removed this case and caused it to be transferred from Cook County, Illinois, the case pending in Cook County, Illinois, should take precedence and it is therefore ordered that the second motion to set pretrial conference and jury trial is denied.*" (Emphasis added.)

¶ 20 While appeal No. 1-05-0701 was pending, the law division, on May 12, 2005, appointed Marina Ammendola as Cristina's guardian *ad litem*. Additionally, Marshall resigned as the independent administrator of Claudia's estate and, on May 13, 2005, the probate division appointed F. John Cushing as independent administrator *de bonis non* of decedent's estate in the probate case. On May 19, 2005, Cushing filed an amended complaint in the Instant Illinois Action.

¶ 21 In appeal No. 1-05-0701, the Clancy firm, on behalf of plaintiffs-appellees (*i.e.*, Cushing, as administrator of Claudia's estate, and Cristina, a minor, by her next friend, Paul Brent), argued that the trial court correctly denied Greyhound's motion to stay the Illinois action. Plaintiffs also argued, *inter alia*, that the Instant Illinois Action and the Colorado Action were based on different underlying issues and that Klein and Cristina were not the same party because they were not in privity and their interests were not sufficiently similar. They asserted that Cristina's damages, on her own behalf, were not at issue in Klein's Colorado Action. They asserted "Klein's 2002 complaint, which was originally filed in the circuit court of Cook County, was improperly filed under Illinois law because the action should have been filed by a court-appointed administrator of Claudia's Estate and only after notice was given to all interested parties, including Cristina." The Clancy firm asserted that Cushing did not seek damages on behalf of Klein against Greyhound. The Clancy firm argued that, even if the court should determine that the Colorado Action and the Instant Illinois Action had been brought by the "same party for the same cause," the discretionary factors, including comity, weighed in favor of denying the stay. In support of this latter argument, the Clancy firm referred to the court order of April 15, 2005 in which the court in Colorado ruled that the Illinois action took precedence. The Clancy firm further noted that resolution of Klein's Colorado Action would not result in complete relief because Motor Coach could not be

joined as a defendant, and it would deprive Cristina's recovery for her own injuries.

¶ 22    Greyhound argued that plaintiffs were "piggy-backing their claims against Greyhound onto their claims against Motor Coach in an exploitative attempt to negate Greyhound's proper transfer of Klein's case to Colorado." Greyhound also requested that the court strike plaintiffs' reference to the order entered on April 15, 2005, because it had not yet been entered and therefore had not been considered by the trial court when it had denied Greyhound's motion to stay.

¶ 23    On September 27, 2005, at Klein's request, the probate division terminated Cushing's independent administration and made Cushing a supervised administrator.

¶ 24    On September 30, 2005, another panel of this court entered a summary order in appeal No. 1-05-0701 and affirmed the trial court's decision to deny Greyhound's motion to stay the Illinois action. The panel concluded that the trial court did not err in denying defendant's motion to stay the case because Klein and Cristina were not the "same party." The court also stated that there was no substantial similarity between the parties and noted that "Klein [was] not [Cristina's] natural father, and he [had] not been appointed to act as her guardian."

¶ 25                        Appeal No. 1-05-1463

¶ 26    While appeal No. 1-05-0701 was still pending, Greyhound, along with Motor Coach, filed another interlocutory appeal, No. 1-05-1463, from the denial of its *forum non conveniens* motion. On September 29, 2006, the same panel that decided appeal No. 1-05-0701 entered a summary order and affirmed the trial court's denial of the *forum non conveniens* motion.

¶ 27              Klein Files Legal Malpractice Suit (No. 07 L 2063)

¶ 28    On February 23, 2007, Klein, *pro se*, filed a legal malpractice suit against various defendants including Cushing, Marshall, attorney Jeanine Stevens, the Clancy firm, the Cogan firm, Greyhound's counsel, and the law firm that filed his 2002 wrongful death action. The case was later voluntarily dismissed on January 29, 2009.

¶ 29    Further Proceedings in the Trial Court Regarding the Instant Illinois Action

¶ 30    After Greyhound's unsuccessful interlocutory appeals in the Instant Illinois Action, a mediation took place on June 28, 2007, pursuant to the parties' agreement. Plaintiffs' settlement demand was $23 million and they refused Greyhound's counteroffer. On July 10, 2007, Greyhound filed a motion for sanctions for mediating in bad faith. The attorney who signed the motion on behalf of Greyhound was Brian A. Schroeder, which we note only because of a concern that has been raised regarding which party or parties he has represented in this matter. Remarkably, the record also contains filings on behalf of Cristina in which Mr. Schroeder is listed as counsel.

-6-

¶ 31                    Second Probate Case (No. 07 P 7929)

¶ 32    On November 8, 2007, Klein, *pro se*, filed a petition in the probate division for guardianship of Cristina. In March 2008, Klein retained attorney David Novoselsky to assist him in his efforts. He was successful and, on July 18, 2008, Klein was appointed guardian of the estate and person of Cristina. Thus, the estate for Cristina Zvunca was opened. There is no transcript of the hearing on the petition and it is unclear whether the probate division was informed of the prior proceedings in the law division or the disposition of appeal No. 1-05-0701 in which this court had specifically noted that Klein had "not been appointed to act as [Cristina's] guardian" and further explained that Klein's interests and Cristina's interests were potentially divergent.

¶ 33     Attorney Novoselsky Assists Klein in First Probate Case (No. 03 P 8718)

¶ 34    After being retained by Klein, attorney Novoselsky also filed, on or about March 27, 2008, a petition in the first probate case involving Claudia's estate (No. 03 P 8718) to change Cushing's status from an independent administrator to a supervised administrator. To say that a dispute between Klein and attorney Novoselsky later arose would be an understatement. The discord between them has resulted in an avalanche of filings in the instant appeal, which were entirely irrelevant to the issue before this court and served only to unnecessarily complicate and delay the resolution of this appeal.

¶ 35                         Appeal No. 1-09-0848

¶ 36    On May 19, 2008, the Cogan firm filed a breach of contract action against Klein alleging that he failed to pay expenses incurred in connection with the wrongful death action that the firm brought on behalf of Claudia Zvunca (No. 08 L 5455). Court records indicate that attorney Novoselsky represented Klein. The trial court granted Klein's motion to dismiss, in which he asserted that the Cogan firm did not represent him personally and that Claudia's estate was the proper defendant. The Cogan firm appealed, and on June 18, 2010, another panel of this court concluded that the parties' contract was ambiguous. The case was reversed and remanded for a determination of the parties' intent.

¶ 37           Attorney Novoselsky Files Actions in Federal & State Court

¶ 38    On August 8, 2008, attorney Novoselsky, on behalf of "Vasile Zvunca and Maria Zvunca, individually and as next friend of a minor, Cristina Zvunca" filed an action in federal court against defendants Motor Coach, Greyhound, and Tatum (No. 08 C 4507). The complaint also contained allegations against Cushing, the Clancy firm, attorney Jeanine Stevens, and guardian *ad litem* Marina Ammendola.

¶ 39    On June 1, 2009, attorney Novoselsky filed a complaint in state court (No. 09 L 6397) containing allegations similar to those contained in the federal suit he had filed. The plaintiffs in the state action were Cristina's estate, Klein, and MB Financial Bank, N.A., as guardian of Cristina's estate. On October 6, 2009, Klein, *pro se*, filed an emergency motion in the case in which he raised serious allegations against Mr. Novoselsky. Among these was

Klein's claim that Mr. Novoselsky had filed the suit on behalf of Klein, as plenary guardian of Cristina Zvunca, but that Klein had not authorized the action. This case has also been the subject of four appeals filed by Klein, either *pro se* or through his counsel, John Xydakis. One of those appeals has been dismissed for want of prosecution. The other three appeals remain pending before this court but are not ready for disposition; Klein has not filed the record in these cases or any brief. He has, however, as in the instant appeal, filed several motions for extensions of time. Klein has also filed motions to consolidate some of these appeals with some of the 28 other related appeals filed in this court.

¶ 40　According to a court order dated July 13, 2010 that was entered in the law division by Judge Maddux, case No. 09 L 6397 was renumbered as case No. 10 L 8051, attorney Novoselsky was granted leave to withdraw his appearance for plaintiff, and the action was dismissed with prejudice.

¶ 41　　Instant Illinois Action is Reassigned from Judge Zwick to Judge Locallo

¶ 42　Meanwhile, the Instant Illinois Action proceeded in the trial court. Records indicate that between May 15, 2008 and August 6, 2009, attorney Novoselsky filed several motions for substitution of judge and reassignment to a judge other than Judge Zwick. None were granted. By court order dated August 13, 2008, Judge Dooling struck one of these motions, noting that attorney Novoselsky represented Klein, who was a potential beneficiary and not a named party to the lawsuit.

¶ 43　On August 27, 2009, however, Judge Locallo granted Greyhound's motion for substitution of judge and transferred the Instant Illinois Action to Judge Maddux for reassignment. On September 3, 2009, Judge Maddux reassigned the case to Judge Locallo.

¶ 44　　Attorney Novoselsky Files Action Against Defendants (No. 09 L 10417)

¶ 45　On September 3, 2009, the same day that Judge Maddux reassigned the Instant Illinois Action to Judge Locallo, attorney Novoselsky filed another action on behalf of Cristina's estate alleging negligent infliction of emotional distress against defendants Motor Coach and Greyhound (No. 09 L 10417). That case is currently the subject of some of the appeals now pending before this court that have been filed by Klein, Cushing and the Clancy firm.

¶ 46　　Judge Locallo Finds Extensive Conflicts and Removes Administrator
for Claudia's Estate, Retained Counsel, and Guardian
*Ad Litem* and Appoints New Guardian *Ad Litem*

¶ 47　On September 8, 2009, five days after the case was transferred from Judge Zwick to Judge Locallo, he concluded that a conflict existed between Cristina and attorney Jeanine Stevens, who represented Cushing. Judge Locallo also concluded that a conflict existed between Cristina and guardian *ad litem* (GAL) Ammendola. Apparently, the trial court based its decision on the lawsuits that had been filed by attorney Novoselsky, described above. Based on this conflict of interest, the trial court entered an order that removed attorneys Jeanine Stevens, Thomas Leahy, Peter Hoste, Thomas Clancy, and the Clancy firm, as well

as the law firm of Leahy & Hoste, from any representation of Cristina, in any capacity, in the law division proceedings under court numbers 07 L 3391 and 09 L 10417. The court also removed GAL Ammendola in case number 07 L 3391 and appointed attorney David Gubbins as guardian *ad litem* for Cristina under case numbers 07 L 3391 and 09 L 10417.

¶ 48     The court order also removed Cushing as administrator. Cushing notes that the trial judge issued his order *sua sponte*, without prior motion, notice, or opportunity to be heard by any of the affected persons. We further note that the order did not refer to section 23-2 of the Probate Act of 1975 (755 ILCS 5/23-2 (West 2002)), which governs removal of an administrator.

¶ 49                                        Judge Locallo Reinstates Cushing

¶ 50     During a hearing on September 17, 2009, nine days after signing an order removing Cushing, the trial court stated that it had not removed Cushing. On September 22, 2009, on his own motion, Judge Locallo vacated his September 8, 2009 order as it applied to Cushing's removal, *nunc pro tunc* September 14, 2009.

¶ 51     Also, on September 22, 2009, despite having reinstated Cushing, Judge Locallo *sua sponte* appointed attorneys David Novoselsky and Louis Cairo as "the sole attorneys for the Estate of Cristina Zvunca, a minor, and for Cristina Zvunca, a minor, individually," and further ordered that "in the Estate of Claudia Zvunca, deceased, Attorneys Novoselsky and Cairo are appointed to represent the interests of the minor, Cristina Zvunca, only." The court also ordered attorney Stevens to turn over her files so that a copy could be provided to attorney Novoselsky, attorney Cairo, and attorney Gubbins. Additionally, the court ordered the caption amended to read "Estate of CRISTINA ZVUNCA, a minor, by her Guardian *Ad Litem*, DAVID J. GUBBINS and F. JOHN CUSHING, Administrator *de bonis* [*non*] of the Estate of CLAUDIA ZVUNCA, deceased." This amended caption replaced Ammendola with Gubbins as the guardian *ad litem*.

¶ 52          Newly Appointed Guardian *Ad Litem* Files Emergency Motion to Protect
                      Cristina's Interests From Klein's Detrimental Conduct

¶ 53     On October 22, 2009, GAL Gubbins filed an "Emergency Motion for Court Relief to Protect Cristina Zvunca's Interests from Detrimental Conduct of [Tiberiu Klein,] the Plenary Guardian." GAL Gubbins asserted that, pursuant to *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563 (1995), once a GAL is appointed, the GAL is charged with defending the interests of the minor, and the GAL is vested with "exclusive authority" to proceed on behalf of the minor in the pending lawsuit. GAL Gubbins argued that despite the probate court's appointment of Klein as the plenary guardian of the minor, Klein no longer had any authority "to proceed or act on behalf of the minor in this lawsuit." GAL Gubbins additionally stated that, despite Klein's lack of authority as a result of the GAL appointment, Klein had attempted to act on behalf of Cristina and consistently attempted to disrupt settlement negotiations, including attempting to stay any future pretrial conference. GAL Gubbins further asserted that since the GAL appointment, Klein had, via numerous telephone and e-mail communications to Cristina, provided incomplete, knowingly false and

misleading information. Klein had also allegedly offered advice to the minor regarding legal representation, settlement values and suggested certain courses of action be taken by Cristina in her litigation. GAL Gubbins also claimed that Klein had filed litigation related to Cristina's cause of action concerning the death of her mother that would potentially benefit Klein, but would be of no benefit to Cristina.

¶ 54　　　　Judge Locallo Bars Klein From Further Filings in Instant Illinois Action

¶ 55　　On October 27, 2009, the trial court held a hearing on GAL Gubbins' emergency motion. Present at the hearing were GAL Gubbins; attorney Novoselsky (on behalf of "plaintiff"), attorney Cairo (on behalf of "plaintiff"), F. John Cushing (as administrator *de bonis non* of the estate of Claudia Zvunca, deceased), attorney Kathryn Mackey (on behalf of defendant, Greyhound), attorney Ellen Douglass (as GAL in probate matter No. 07 P 7929), and Klein. Concerns were raised by various participants regarding Klein's conflict with Cristina. In addition to requesting an order barring Klein from participating in this case, GAL Gubbins requested that "a corporate fiduciary institution, such as Northern Trust, [be] appointed plenary guardian, [so that the parties could] proceed on with the pretrial and, if necessary, the trial." Attorney Novoselsky stated that he believed they needed "a fiduciary who does not have a conflict to act as the guardian of the estate of this child in the law division proceedings." Probate-appointed GAL Douglass told the court that "if there's any settlement or if there are any proceeds, a corporate fiduciary is going to be brought in, that's going to be my recommendation. Mr. Klein would not be the most appropriate guardian, in my opinion, once the moneys are here."

¶ 56　　Klein, however, expressed his concern that attorney Novoselsky had a conflict of interest with both Cristina's estate and Claudia's estate. He contended that attorney Novoselsky had brought in an attorney, Brian Schroeder, who formerly had been Greyhound's counsel on the case for five years, and that Mr. Novoselsky had Mr. Schroeder file a motion on behalf of the plaintiffs in the probate court matter. Regarding Mr. Schroeder's filing a motion, attorney Novoselsky stated that it was done in error and was withdrawn. (We note with concern, however, that attorney Novoselsky filed an appearance in the instant appeal in this court with attorney Schroeder listed on the appearance form.) Klein also made several statements to the trial court relating to his status in the Instant Illinois Action including: "there is a case in Colorado"; "that [Colorado] case is only about me"; and "Cristina is not part of that [Colorado] case, and I am not part of this [Illinois] case." The trial court ordered that Klein was barred from filing anything with respect to the Instant Illinois Action.

¶ 57　　Also discussed at the October 27, 2009, hearing was an upcoming pretrial conference and the roles of the various parties and attorneys, including Cushing. GAL Gubbins expressed his opinion that he, and not Klein, had the "exclusive authority to proceed on behalf of the minor in the pending lawsuit." Attorney Novoselsky, Cristina's attorney, stated that GAL Gubbins should speak for Cristina. Attorney Novoselsky also asserted that, should there be a settlement, Cushing's role, as supervised administrator of the estate of the mother, would be limited to reporting to the probate division as to whether he recommended the settlement.

¶ 58　　Cushing agreed that he should not participate in the settlement decision:

-10-

"[CUSHING]: Judge, as we talked last time we had the pretrial, there were concerns I had that I thought it was best at that time, as I explained to the Court when we were having our pretrial conferences, that it might be best for the purpose of settlement that ... that I didn't.

[COURT]: No.

[CUSHING]: I mean, I mentioned to you that, you know, putting another lawyer involved at this point, if truly the parties are close to settling, the last thing I want to do is try to stop or hinder that settlement.

If I bring an attorney, it would be under contract, and I will assign someone for a contingency fee, and, as I explained to the court, I don't know how that helps us."

Attorney Novoselsky stated that "any settlement, as your Honor noted before, would have to be reported to the various parties. So no one is suggesting that Mr. Cushing be left out in the dark if there's a proposed settlement."

¶ 59            November 17, 2009 Order Entered "On the Court's Motion"

¶ 60     On November 17, 2009, Judge Locallo entered a written order "on the Court's motion" appointing Northern Trust Company as guardian of Cristina's estate based on the representations of: (1) Mr. Klein that, as Cristina's plenary guardian, he had "no intention of interfering with any portion of the causes of action available to, or rights of recovery on behalf of Cristina"; and (2) statements made by Cristina's guardian *ad litem* that "a financial institution would have to be appointed to protect recovery of funds which are the sole asset" of Cristina's estate, as well as the decedent's estate. It is unclear from the record whether Northern Trust Company was informed of, or accepted, its appointment and, if so, by whom. As Cushing notes, the order was entered without notice to Cushing.

¶ 61            December 11, 2009 Order Entered "On the Court's Motion"

¶ 62     On December 11, 2009, despite the order appointing Northern Trust Company, Judge Locallo entered another order in which MB Financial Bank, N.A., was substituted for Northern Trust Company as guardian of the estate of Cristina Zvunca, a minor. The order states as follows:

"This matter coming to be heard on the court's motion, and based on the authority vested in this court pursuant to the decision in *Ott v. Little Company of Mary Hospital*, [273 Ill. App. 3d 563 (1995),] based upon the representations made before this court by [Klein] stating that [Klein] had no intention of interfering with any portion of the causes of action available to or rights of recovery on behalf of Cristina Zvunca, and also based upon the statements made before this court by the guardian *ad litem* in the Probate Proceedings that a financial institution would have to be appointed to protect the recovery of funds which are the sole asset of the Estate of Cristina Zvunca as well as the Estate of the minor's deceased mother [Claudia Zvunca];

It is hereby ordered that MB Financial Bank, N.A. is appointed as the Guardian of the Estate of Cristina Zvunca, a minor, and is directed to act in that capacity with regard to

any cause of action that has or may accrue to Cristina Zvunca in the Law Division of the circuit court of Cook County, and shall act as her guardian *as to any damages sustained by Cristina Zvunca as a beneficiary of the Estate of Claudia Zvunca, deceased.*

It is further ordered that this court's guardian *ad litem*, David Gubbins, as well as the attorneys appointed by this court to represent the interests of Cristina Zvunca, David Novoselsky and Louis Cairo, are directed to cooperate with and assist MB Financial Bank, N.A. in its role as guardian of the Estate of Cristina Zvunca, a minor." (Emphasis added.)

¶ 63 The record is unclear as to what activities transpired that prompted the trial court to enter its own order. In any event, the only role of MB Financial Bank, N.A., in the wrongful death action was to *protect recovery of funds* which might accrue to Cristina as a result of a settlement or verdict. Also, although the court directed the "court-appointed" attorneys (Cairo and Novoselsky) only "to cooperate with and assist" MB Financial Bank, N.A., we note that attorney Novoselsky later asserted that he represented MB Financial Bank, N.A.

¶ 64                                    Case Reassigned in the Law Division

¶ 65 On December 24, 2009, Judge Locallo retired. The case was assigned to Judge Haddad.

¶ 66         Cushing Objects to MB Financial Bank, N.A.'s Appointment as "Guardian"

¶ 67 On January 11, 2010, Cushing filed a motion to reconsider the December 11, 2009 appointment of MB Financial Bank, N.A., as guardian of the estate of Cristina Zvunca, and petitioned for its removal. Cushing, however, is no longer pursuing any issue related to the appointment of MB Financial Bank, N.A., as "guardian" of Cristina's estate. This appeal involves only the appointment of MB Financial Bank, N.A., as "special administrator" of Claudia's estate.

¶ 68                          Judge Haddad Accedes to Judge Locallo's Rulings
                                   to Enable Orderly Resolution of Case

¶ 69 On January 14, 2010, Judge Haddad held a hearing and noted there had been no special administrator appointed in the law division "to carry the case through." The court stated that although it was "just a formality" it was "supposed to be done." Attorney Novoselsky indicated that he was drafting the motion for the appointment and recommended that MB Financial Bank, N.A., be appointed as the special administrator. The trial court also stated that "[p]robate administrators and guardians are welcome to watch this trial, but–and to participate as they see fit. I'm certainly not going to bar them from their work." The court noted that attorneys Cairo and Novoselsky had been appointed to represent Cristina in her personal action for emotional distress and her interests as the beneficiary of Claudia's estate. The court further explained its role as follows: "the trial judge will either approve settlement or approve the judgment and the verdict, *** will then apportion the recovery of each party, approve fees and costs, and then send the matter, and only then, to Probate, who will be authorized to administer the actual distribution of proceeds." Cushing and his attorney, Scott

Golinkin were present and did not voice any disagreement or objection. The court entered a written order that stated in relevant part as follows: "This court accedes to rulings of [the prior law division trial judge] to enable an orderly resolution or trial of this matter forthwith, and to respond to the variable interests of the participants hereunder under *Will v. Northwestern University*[, 378 Ill. App. 3d 280 (2007),] and *Ott v. Little Company of Mary Hospital*[, 273 Ill. App. 3d 563 (1995)]." The order further stated:

"With the consent of the parties this court will continue to conduct pretrial settlement discussions under Supreme Court Rule 63, and further confer with the guardian *ad litem*. In these discussions the court welcomes input from all beneficiaries, including representatives of the minor and decedent's spouse. As to any possible resolution of this case, the court is proceeding in conformity with the joint probate-law division order of March 2007 referenced and incorporated in this order today."

¶ 70                    Trial Court Proceedings on January 21, 2010

¶ 71    On January 21, 2010, the court held a status conference and set a case management schedule. The court entered a detailed written order which included the next status date of January 28, 2010. GAL Gubbins sent a copy of the order to attorney Golinkin.

¶ 72    Also, on January 21, 2010, attorney Novoselsky filed a third amended complaint in case No. 09 L 6397, described earlier. The named plaintiff was "MB Financial Bank, N.A., as Guardian of the Estate of Cristina Zvunca, a Minor as to all Law Division Matters." Similar to the complaint that attorney Novoselsky had filed in federal court in August 2008 (No. 08 C 4507), described earlier, the named defendants were attorney Jeanine Stevens, the Clancy firm, GAL Ammendola, attorney Thomas Leahy, the Leahy & Hoste law firm, and Cushing.

¶ 73                Further Trial Court Proceedings in Instant Illinois Action

¶ 74    On January 28, 2010, the court held a status conference. Neither Cushing nor attorney Golinkin attended. The court did not enter any order regarding the removal of Cushing as the administrator of Claudia's estate nor enter any findings regarding a conflict regarding Cushing. Nonetheless, pursuant to a motion brought by MB Financial Bank, N.A., the trial court appointed MB Financial Bank, N.A., as special administrator of the estate of Claudia Zvunca, deceased. The record does not contain a copy of the motion. As noted earlier, however, attorney Novoselsky stated during the January 14, 2010 hearing that he was drafting the motion for the appointment, and the January 28, 2010 court order appointing MB Financial Bank, N.A., as special administrator was prepared by attorney Novoselsky.

¶ 75            Cushing Objects to MB Financial Bank, N.A.'s Appointment
                            as "Special Administrator"

¶ 76    On February 17, 2010, Cushing filed a motion to reconsider the January 28, 2010 order appointing the special administrator. Cushing argued that the trial court had no authority to appoint a special administrator because there was a probate administration in place, for which Cushing was the supervised administrator *de bonis non*. Cushing also argued that a

-13-

petition to appoint a special administrator could only be brought by a person entitled to recover under the Wrongful Death Act (740 ILCS 180/1 *et seq*. (West 2008)), and that neither Cristina nor Klein had brought a petition. Additionally, Cushing argued that there had been no notice or proof of service evidencing notice to Klein, Cristina, Cristina's adoptive parents (her grandparents), GAL Douglass, or Cushing.

¶ 77    On February 23, 2010, the court held a hearing on Cushing's motions. The court stated that the appointment of MB Financial Bank, N.A., was "an administrative move" to "clean up the record." Cushing raised several arguments regarding the appointment. He noted that he was the administrator already appointed by the probate division and that the appointment of the special administrator did not comply with the requirements of the Wrongful Death Act. Cushing noted that there was no provision in the Wrongful Death Act allowing for the appointment of a special administrator in the Instant Illinois Action. He argued that the statute provides that only an heir can move for the appointment of a special administrator. He further noted that even where there is authority to appoint a special administrator, notice of the hearing was required and he received no notice. Cushing also argued that a special administrator could only be appointed where the sole asset of the estate was a wrongful death action, but the Instant Illinois Action also involved survival claims. He further contended that the appointment "effectively and completely eviscerate[d] any role Mr. Cushing [had] in this case."

¶ 78    The court disagreed with this latter contention, stating that Cushing was the "probate" administrator and would "get this case when we are done here." The court also opined that it did not want an administrator who had "been accused of *** having a conflict" and that "the idea here is to have a clean case so we can proceed to trial." Regarding the purported conflict on the part of Cushing, the court made no determination and instead stated "I have nothing to go on here one way [or] the other." The court also asked Cushing, if the appointment of the special administrator did not satisfy the statutory requisites, what difference that made "in the final analysis of this case [and] in terms of the rights of the parties here." Cushing responded that it was "Mr. Cushing who was appointed by the probate court [and] the person who should be pursuing that." Cushing also argued that the court could not appoint MB Financial Bank, N.A., as special administrator merely because the court believed it was convenient. The court recognized that Cushing was an administrator, but opined that "he is in probate." The court further opined as follows: "I know he will do a fine job once this case is over with here, and we will be happy to turn it over to him at that point in the probate division and the good judges there, but for my purposes here, this is a formality, and I question this motion."

¶ 79    On February 24, 2010, the trial court entered a written order denying Cushings' motions. The order did not contain a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). On March 19, 2010 Cushing filed the instant appeal pursuant to Illinois Supreme Court Rule 304(b)(1).

¶ 80    Greyhound and David J. Gubbins, guardian *ad litem*, have filed response briefs. Both argue that this court lacks jurisdiction over Cushing's appeal and, alternatively, that the trial court did not abuse its discretion in appointing a special administrator to protect the best interests of a minor. MB Financial Bank, N.A., has not filed a responsive brief in this appeal.

However, we allowed its motion to adopt Greyhound's brief.

¶ 81                                    ANALYSIS

¶ 82                                   Jurisdiction

¶ 83    Greyhound contends that this court lacks jurisdiction over Cushing's appeal. A reviewing court has a duty to ascertain its jurisdiction before proceeding in a cause of action and must dismiss the appeal if the court lacks jurisdiction. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010); *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009).

¶ 84    Cushing asserts that this court has jurisdiction under Illinois Supreme Court Rule 304(b)(1) (eff. Feb. 26, 2010), which provides:

   "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

      (1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party."

This court has explained:

   "A central reason behind making the time for appeal of such orders mandatory, and not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate administration. [Citation.] Without the Rule 304(b)(1) exception, an appeal would have to be brought after an estate was closed, the result of which might require reopening the estate and marshaling assets that have already been distributed. That result would be both impractical and inefficient. [Citation.]

   Only final orders fit within Rule 304(b)(1). It is not necessary that the order resolve all matters in the estate, but it must resolve all matters on the particular issue. A final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit *** and disposes of the entire controversy; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. [Citation.]" (Internal quotation marks omitted.) *Stephen v. Huckaba*, 361 Ill. App. 3d 1047, 1051-52 (2005).

¶ 85    We conclude that Rule 304(b)(1) is applicable because the order that Cushing appeals from did "finally determine[ ] a right or status of a party." Cushing is a party in this action. Moreover, the Committee Comments to Rule 304(b)(1) suggest the following examples of final appealable orders: admission or denial of a will to probate, *appointment or removal of an executor*, and allowance or disallowance of a claim. (Ill. S. Ct. R. 304(b), Committee Comments (rev. Sept. 1988)). The trial court, in appointing a special administrator, stated that it did not remove Cushing and also stated that the appointment was a mere formality. The trial court additionally stated "[p]robate administrators and guardians are welcome to watch this trial, but–and to participate as they see fit. I'm certainly not going to bar them from their work." Regardless, the order appointing a special administrator in the law division case, combined with the trial judge's subsequent actions, effectively changed Cushing's

-15-

status as the supervised administrator *de bonis non*. As Cushing also notes, the trial judge's additional statements demonstrate that the appointment of the special administrator effectively excluded Cushing from his appointed role. We conclude that we have jurisdiction over the appeal.

¶ 86                                                    Mootness

¶ 87     During the pendency of this appeal, the underlying case settled. Greyhound has now argued that, in light of the settlement, the construction of section 2.1 of the Wrongful Death Act "is academic."

¶ 88     Cushing filed his appeal before the case settled and he concedes that he "does not appeal for the purpose of overturning the settlement." In his opening brief, Cushing's only request was that this court "vacate the order appointing MB [Financial Bank, N.A.,] as Special Administrator of the Estate of Claudia Zvunca." In his reply brief, however, he further requests that we "remand the case to the trial court to conduct the case from the point of removal forward." Cushing notes that "[o]ther aspects of the case are on appeal." He argues that "if actions of the trial court are overturned, reinstating Cushing to his rightful role will enable him to protect the interests of the beneficiaries of the estate; including preserving the two survival counts, which cannot be maintained by the special administrator."

¶ 89     Despite the settlement, we do not believe that the issue raised in this appeal is "academic" or moot. Should any of the "other aspects of the case" that are being appealed result in the settlement being vacated and a remand to the trial court, our disposition regarding Cushing's status would be relevant. Therefore, we will consider the merits of this appeal.

¶ 90                                                    Standing

¶ 91     During the pendency of this appeal, by the time oral arguments were held in this matter, 64 motions had been filed. More were filed after oral arguments were held. The majority of these motions raised issues unrelated to the issue in this appeal and the issue of standing arose. Most of these motions were filed by Tiberiu Klein. Although Klein is a beneficiary of Claudia's estate, his motions were purportedly brought on behalf of the interests of the minor beneficiary, Cristina, in Klein's role as her "plenary guardian." Many responses and additional motions were brought by attorney Novoselsky, who filed an appearance on behalf of MB Financial Bank, N.A., as guardian of the estate of the minor, Cristina, and also filed his motions in his role as "court appointed" attorney for the estate of Cristina.

¶ 92     A wrongful death cause of action must be brought by, and in the name of, the representative or administrator of the decedent's estate, and "*it is this administrator who possesses the sole right of action or control over the suit*." (Emphasis added.) *Will v. Northwestern University*, 378 Ill. App. 3d 280, 289 (2007). The *Will* court further explained that estate beneficiaries of a wrongful death action are not "parties" of record in their individual capacities to the suit, have no right of action or control over the suit, and have no standing to appeal the suit. The administrator's right to control the wrongful death action has long been recognized. See, *e.g.*, *Rodgers v. Consolidated R.R. Corp.*, 136 Ill. App. 3d 191,

193 (1985) ("In Illinois, wrongful death suits must be brought by and in the name of the personal representative of the deceased. The personal representative possesses the sole right of action or control over the litigation."); *In re Estate of Harnetiaux*, 91 Ill. App. 2d 222, 227 (1968) (Wrongful Death Act contains no requirement that a guardian of the minor child intervene in wrongful death action; it is the administrator, and not the heir, who has both the right to institute and the right to settle a wrongful death action). Thus, consistent with these principles, we concluded that neither beneficiary had standing in this appeal as a party and, therefore, could not participate in oral argument.

¶ 93    With respect to attorney Novoselsky, to the extent he represents a beneficiary, who is not a party to this appeal, he would not be entitled to participate at oral argument. We could not, however, ascertain from attorney Novoselsky's numerous filings whose interests he purported to represent in this appeal. Thus, at oral argument, we attempted to clarify his representation. Attorney Novoselsky, however, claimed that he has been trying to be relieved from his duties in this case. He additionally represented to the court that he did not intend to participate in oral argument. With the issue of standing resolved, we now proceed to the merits of this appeal.

¶ 94                                              Merits

¶ 95    This appeal concerns one limited issue: whether the trial court improperly appointed a special administrator of the estate of Claudia, when an administrator had already been appointed for the estate. This issue involves interpretation of the Illinois Wrongful Death Act. 740 ILCS 180/1 (West 2002). Thus, we begin our analysis with a review of the principles of statutory interpretation.

¶ 96    The interpretation of a statute is a legal issue, and our review is *de novo*. See, *e.g.*, *American Airlines, Inc. v. Department of Revenue*, 402 Ill. App. 3d 579, 589 (2009). A deferential standard of review is inapplicable to this question of law. See, *e.g.*, *People v. Kohl*, 364 Ill. App. 3d 495, 499 (2006) ("legal findings–such as a trial court's interpretation of a statute–are entitled to no deference").

¶ 97    "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent ***." *First American Bank Corp. v. Henry*, 239 Ill. 2d 511, 515 (2011). The most reliable indicator of legislative intent is the language of the statute which must be given its plain and ordinary meaning. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). This court must construe the statute as a whole, viewing words and phrases in light of other relevant statutory provisions and not in isolation. *In re E.B.*, 231 Ill. 2d 459, 466 (2008). Each word, clause, and sentence of the statute must be given a reasonable meaning, if possible, and should not be rendered superfluous or meaningless. *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001).

¶ 98    Section 1 of the Wrongful Death Act states in relevant part:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable

-17-

if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." 740 ILCS 180/1 (West 2002).

¶ 99 The Illinois Supreme Court provided a thorough discussion of the controlling principles of the Wrongful Death Act in *Williams v. Manchester*, 228 Ill. 2d 404 (2008). As the *Williams* court explained, the Wrongful Death Act, being in derogation of the common law, must "be strictly construed and nothing is to be read into such [a statute] by intendment or implication." (Internal quotation marks omitted.) *Id.* at 419; accord *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 360 (1995) (holding that the Act "should be strictly construed" (internal quotation marks omitted)). "The Act alone is the source of the right to sue." *Williams*, 228 Ill. 2d at 420.

¶ 100 Section 2 of the Wrongful Death Act "specifies in whose name and for whose benefit the action shall be brought." *Id*. at 419. Section 2 provides in relevant part:

"Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person ***." 740 ILCS 180/2 (West 2002).

Claudia Zvunca is the deceased person and F. John Cushing is administrator *de bonis non* of the estate of Claudia Zvunca; thus, Cushing is the personal representative of the deceased person. Unless and until he is removed, he has the exclusive authority to bring the wrongful death action. See *Nagel v. Inman*, 402 Ill. App. 3d 766, 770 (2010) (wrongful death action must be filed by a representative of the decedent on behalf of the estate, and there is no proper plaintiff where the person named in the caption as the administrator of the decedent's estate was not properly appointed); see also *Wilmere v. Stibolt*, 152 Ill. App. 3d 642, 646 (1987) (only administrator or executor of estate can maintain survival action). Cushing is also the party who can conduct or control the action. See *Will v. Northwestern University*, 378 Ill. App. 3d 280, 289 (2007) (and cases cited therein) (a wrongful death cause of action must be brought by, and in the name of, the representative or administrator of the decedent's estate, and *it is the administrator who possesses the sole right of action or control over the suit*).

¶ 101 Moreover, as Cushing notes, the Probate Act provides for the powers and duties of an administrator of an estate. Section 10-4 of the Probate Act of 1975 states, in pertinent part: "An administrator to collect has power to sue for and collect the personal estate and debts due the decedent *** and by leave of court to exercise the powers vested by law in an administrator." 755 ILCS 5/10-4 (West 2002).

¶ 102 Cushing now contends that the appointment of MB Financial Bank, N.A., as special administrator of the estate of Claudia Zvunca is void. We agree.

¶ 103 "A judgment is void (as opposed to voidable) only if the court that entered it lacked jurisdiction." (Internal quotation marks omitted.) *People v. Mescall*, 379 Ill. App. 3d 670, 673 (2008). "The jurisdictional failure can be the court's lack of (1) personal jurisdiction or (2) subject matter jurisdiction, *but it can also be (3) that the court lacked the power to render the particular judgment or sentence*." (Internal quotation marks omitted.) (Emphasis added.)

-18-

*Id.* "Some courts characterize the third jurisdictional problem as a subspecies of subject matter jurisdiction while others characterize it as a situation where a court acts in excess of its jurisdiction." *People v. Sharifpour*, 402 Ill. App. 3d 100, 120 (2010). A void order is a complete nullity from its inception and has no legal effect. *Jones v. Chicago Cycle Center*, 391 Ill. App. 3d 101, 107 (2009). As the supreme court recently explained, not in the context of the wrongful death statute, but nonetheless in the context of discussing the court's *purely statutory* authority: "When a court exercises its authority, it must proceed within the confines of that law and has no authority to act except as that law provides. [Citation.] A court is not free to reject or expand its statutory authority despite the desirability or need for such action. [Citation.] Any action the trial court takes that is outside the statute's stricture is void." (Internal quotation marks omitted.) *In re Haley D.*, 2011 IL 110886, ¶ 92.

¶ 104      "It is well settled that courts cannot depart from the plain language of a statute by reading into it exceptions, limitation, or conditions not expressed by the legislature." *In re Haley D.*, 2011 IL 110886, ¶ 73. Section 2.1. of the Wrongful Death Act states as follows:

"In the event that the only asset of the deceased estate is a cause of action arising under this Act, *and no petition for letters of office for his or her estate has been filed*, the court, *upon motion of any person who would be entitled to a recovery under this Act*, and after such notice to the party's heirs or legatees as the court directs, and without opening of an estate, may appoint a special administrator for the deceased party for the purpose of prosecuting or defending the action." (Emphasis added.) 740 ILCS 180/2.1 (West 2002).

Thus, under the plain, unambiguous language of section 2.1 of the Wrongful Death Act, a trial court has authority to appoint a special administrator for purposes of prosecuting a wrongful death claim, but *only if* a probate estate has not been opened. *In re Estate of Poole*, 207 Ill. 2d 393 (2003); *Kubian v. Alexian Brothers Medical Center*, 272 Ill. App. 3d 246 (1995) (trial court lacks authority to appoint a special administrator for the purpose of prosecuting a wrongful death action once a petition for issuance of letters of administration had been filed); *In re Estate of Redeker*, 210 Ill. App. 3d 769, 772 (1991) ("where a petition for letters of office has been filed, no special administrator for the prosecution of a wrongful death action may be appointed"); *In re Estate of Faught*, 111 Ill. App. 3d 1043, 1045 (1983) (powers and the duties of a special administrator are strictly limited to those prescribed by the wrongful death statute and the special administrator's authority ceases upon issuance of the letters testamentary); see also *Estate of Johnson v. Village of Libertyville*, 819 F.2d 174, 176 (7th Cir. 1987) (rejecting argument that special administrators could be appointed on a limited basis to represent the estate when the administrator may have a conflict of interest and explaining that "under Illinois law the appointment of a special administrator without prior revocation of the letters of a duly appointed executor is void"); *Hillyard v. National Dairy Products Corp.*, 301 F.2d 277, 279 (7th Cir. 1962) ("An order appointing a special administrator to collect without revoking the letters of a duly qualified and acting executor is void."). "Although the Illinois Probate Act provides that the Act 'shall be liberally construed to the end that controversies and the rights of the parties may be speedily and finally determined ***' [citation], the Probate Act does not authorize a court to exceed the

power given it by statute or to disregard clear legislative intent." *In re Estate of Howard*, 67 Ill. App. 3d 595, 597 (1978). "The Wrongful Death Act must be strictly construed and not rewritten to comport with a court's idea of orderliness and public policy." *Baez v. Rosenberg*, 409 Ill. App. 3d 525, 529 (2011).

¶ 105    In the instant case, letters of office had been filed and a probate estate for the decedent had been opened, for which Cushing was already the administrator. As a result, the trial court lacked authority to appoint a special administrator. The trial court, in appointing MB Financial Bank, N.A., as special administrator of the estate of Claudia Zvunca failed to follow the mandate of section 2.1 of the Act. We conclude that the trial court's order is void.

¶ 106    There appears to be an additional reason the trial court's order is void. The plain language of the statute requires that the motion to appoint the special administrator must be made by "any person who would be entitled to a recovery under this Act." Thus, had no probate estate been opened, the only two persons who could have moved for the appointment of a special administrator would have been Cristina Zvunca or Tiberiu Klein, neither of whom did so. The record here shows that the court order, prepared by attorney David Novoselsky, states that it was made upon the motion of MB Financial Bank, N.A., as "guardian of the Estate of Cristina Zvunca." But, as noted earlier, the only role of MB Financial Bank, N.A, in its role as guardian of Cristina's estate in the wrongful death action was to *protect recovery of funds* which might accrue to Cristina as a result of a settlement or verdict.

¶ 107    Greyhound now asserts that the trial court had discretion to appoint MB Financial Bank, N.A., as special administrator pursuant to *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563 (1995). Contrary to Greyhound's contentions, nothing in *Ott* changes our conclusion that the trial court's order appointing a special administrator is void.

¶ 108    The *Ott* court noted that when the evidence shows that a settlement is in the best interests of the minor, the trial court has the authority to approve a settlement. *Ott*, 273 Ill. App. 3d 563. Moreover, it is well settled that "[e]very minor plaintiff is a ward of the court when involved in litigation, and the court has a duty and broad discretion to protect the minor's interests." *Id.* at 570-71. "This duty is reflected in the statutory requirement that the court approve or reject any settlement proposed on the minor's behalf." *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 204 (2007).

¶ 109    The case of *Ott*, however, is distinguishable. *Ott* was not a wrongful death action. It was a minor's medical malpractice action where the parents, who were the co-guardians of the minor's estate, objected to the terms and refused to consent to the settlement agreement. Nonetheless, the trial court in *Ott* stated: " 'This case is settled for two million dollars according to a revised structured settlement, which I find satisfactory, and *a guardian ad litem will be appointed in place of the father to accept the settlement*.' " (Emphasis added.) *Ott*, 273 Ill. App. 3d at 568. The parents maintained their position and refused to accept the defendants' $2 million present cash value settlement offer. The trial court subsequently accepted and approved the report of the guardian *ad litem*; found the recommendations were in the best interest of the child; increased the settlement amount to $2,091,782; and ordered the guardian *ad litem* to execute all necessary documents to settle the case. The court found the settlement was fair and reasonable and the case was dismissed. The parents appealed and

argued that the settlement dismissal order was improper where the trial court: (1) coerced settlement thereby depriving plaintiffs of their right to trial; (2) improperly removed control of the minor's case from her parents/guardians by appointing a guardian *ad litem*; and (3) engaged in extrajudicial communication with the guardian *ad litem*; and (4) approved a settlement amount that was arbitrary and wholly inadequate. The appellate court affirmed the trial court.

¶ 110    *Ott* stands for the proposition that "when the court believes settlement to be in the minor's best interest, the court may order a prior-appointed guardian or conservator to effectuate settlement [citation]; *and if that person refuses*, may appoint a *guardian ad litem* to settle the case on the minor's behalf." (Emphasis added.) *Ott*, 273 Ill. App. 3d at 571. Assuming, without deciding, that the appointment of David Gubbins as the new "guardian *ad litem*" and the appointment of MB Financial Bank, N.A., as guardian of the minor's estate in the instant case were within the court's authority to protect the interests of the minor beneficiary, those appointments had no bearing on the trial court's authority to appoint a "special administrator" pursuant to the Wrongful Death Act when an administrator *de bonis non* had already been appointed by the probate division to represent the estate of the decedent, Claudia Zvunca.

¶ 111    Greyhound also suggests that the purpose of Cushing's appeal may be "about paving the way to attack the disallowance of [Cushing's attorney] fees." Whatever may have motivated the appeal, the legal analysis must guide our resolution of the dispute.

¶ 112                                        Remedy

¶ 113    Having determined that the trial court's order was void, we must now consider the remedy. Greyhound has contended that Cushing was not prejudiced by the appointment of a special administrator. The question of prejudice, however, is a determining factor when an order is voidable, not when it is void. *GMB Financial Group, Inc. v. Marzano*, 385 Ill. App. 3d 978, 983-84 (2008). Moreover, Cushing has conceded that he does not seek to overturn the settlement. As noted, on October 27, 2009, Cushing stated "if truly the parties are close to settling, the last thing I want to do is try to stop or hinder that settlement." Nonetheless, the estate of Claudia Zvunca is entitled to representation and it is Cushing, as the probate-appointed administrator, who must provide that representation. Other aspects of this case are on appeal, and the settlement is being contested. Should that settlement be vacated for any reason, Cushing's status must be clarified. Until such time as this case is finally resolved, or Cushing is removed as administrator through proper procedures, he must be the party who controls the wrongful death lawsuit on behalf of the estate of Claudia Zvunca.

¶ 114    We express no opinion on the assertion that Cushing had a conflict of interest that required the appointment of a special administrator. We do note, however, that the Probate Act of 1975 provides a comprehensive method for removing a representative. See 755 ILCS 5/23-2, 23-3 (West 2008). By this ruling, we do not take a position on whether Cushing was susceptible to removal under the proper procedures. We hold only that without removal, a special administrator could not be appointed.

¶ 115                                              CONCLUSION

¶ 116        In accordance with the foregoing, we hold that the trial court lacked authority to appoint a special administrator under the Wrongful Death Act because letters of office had already issued and a probate estate had been opened. F. John Cushing, so long as he retains the position of special administrator *de bonis non* of the estate of Claudia Zvunca, is the party who possesses the sole right of action and control of the wrongful death suit filed on behalf of the estate of Claudia Zvunca, deceased. We vacate the circuit court's January 28, 2010 order appointing the special administrator.

¶ 117        Order vacated.